IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PARKER-HANNIFIN CORPORATION, and PARKER INTANGIBLES, LLC<br><br>Plaintiff,<br><br>v.<br><br>ZIPPERTUBING (JAPAN), LTD.,<br><br>Defendant. | Civil Action No. 06-751-MPT<br><br>**REDACTED** |

### ZIPPERTUBING'S ANSWERING CLAIM CONSTRUCTION BRIEF

**FISH & RICHARDSON P.C.**
William J. Marsden, Jr. (#2247)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
(302) 652-5070

John B. Pegram
John D. Garretson
David Loretto
Michael Zoppo
Citigroup Center – 52nd Floor
153 East 53rd Street
New York, NY 10022-4611
(215) 765-5070

ATTORNEYS FOR DEFENDANT
ZIPPERTUBING (JAPAN), LTD.

Date: July 15, 2008

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................. 1

II. SUMMARY OF ARGUMENT ............................................................................ 1

III. PLAINTIFFS' BACKGROUND ALLEGATIONS ARE IRRELEVANT AND CONTRADICTED BY THE PRIOR ART ............................................................ 1

IV. ARGUMENT ........................................................................................................ 3

   A. "core member…is not V-0 rated;" ................................................................ 3

   B. "exterior surface" .......................................................................................... 5

   C. "thickness dimension" .................................................................................. 5

   D. "Coating at least a portion of the interior surface of said fabric member…" ............. 6

   E. "penetrating…such that the exterior surface remains conductive" ............. 6

   F. about 30-50% "by weight" of one or more flame retardant additives;  about 30% "by weight" of one or more flame retardant additives;  about 50% "by dry weight" of one or more flame retardant additives. ............................................................... 6

      1. "by weight" ............................................................................................. 7

      2. "dry weight" ........................................................................................... 7

V. CONCLUSION ..................................................................................................... 8

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Apple Computer, Inc. v. Articulate System, Inc.*,
   234 F.3d 14 (Fed. Cir. 2000) ................................................................................ 6

*Bell & Howell Document Management Products Co. v. Altek System*,
   132 F.3d 701 (Fed.Cir.1997) ................................................................................ 3

*Engel Industrial, Inc. v. Lockformer Co.*,
   96 F.3d 1398 (Fed.Cir.1996) ................................................................................ 4

*Phillips v. AWH Corp.*,
   415 F.3d 1303, 1310 (Fed. Cir. 2003) .................................................................. 5

*Rocep Lusol Holding Ltd. v. Permatex, Inc.*,
   470 F. Supp. 2d 448 (D.Del. 2007) ....................................................................... 4

*Voice Techs Group, Inc. v. VMC Systems, Inc.*,
   164 F.3d 605 (Fed. Cir. 1999) ............................................................................... 3

## DOCKETED CASES

*Parker-Hannifin v. Schlegel Corp.*,
   Civil Action No. 1:07-cv-266-MPT ...................................................................... 2

I.  **INTRODUCTION**

Defendant Zippertubing (Japan) Ltd. ("Zippertubing") submits this answering brief in response to the opening claim construction brief of Plaintiffs Parker-Hannifin Corporation and Parker Intangibles, LLC ("Plaintiffs")(Plaintiff's Opening Brief, D.I. 40).

II. **SUMMARY OF ARGUMENT**

Plaintiffs' proposed constructions contradict the plain meaning of the claim language and the prosecution history. To support these constructions, they invoke "obstacles" and "hard work and much experimentation" which have no relevance to claim interpretation. The plaintiffs' reliance on an uncorroborated inventor affidavit in support of their "V-0" constructions is not only legally improper, it is a telling admission of the lack of intrinsic evidence supporting their proposals. Plaintiffs' arguments should be rejected.

III. **PLAINTIFFS' BACKGROUND ALLEGATIONS ARE IRRELEVANT AND CONTRADICTED BY THE PRIOR ART**

Plaintiffs' Opening Brief depicts inventors who, confronted with inferior prior art gaskets made with flame-resistant ("FR") foam, conceived of "load[ing] the majority of the FR additives into the coating rather than into the foam." (Plaintiffs' Opening Brief at 4, D.I. 40). Plaintiffs assert that the inventors "were forced to overcome several obstacles" because "a high level of FR additives changes such properties as...viscosity and bonding ability which are critical in applying the coating to the fabric." (*Id*. at 4-5.) However, "[t]hrough hard work and much experimentation with different formulations," the inventors supposedly devised "a coating composition with the proper balance of viscosity, processability, FR qualities and adhesives characteristics." *Id*. at 5. These self-serving statements are not relevant to any claim

1

**REDACTED**

construction issue. Furthermore, the same purported obstacles had been faced, and solved, by others long before the patents in suit were filed.

The factors that influence the bonding of viscous liquids to fabrics in a knife-coating process—the technique used in the specification ('348 Patent 9:61-65)—had been described as far back as the 1970s.[1,2] In the same era, coating formulations with the same viscosity as the example in the specification ('348 Patent 9:50-60) were developed for knife coating fabrics.[2] Further, flame retardant latexes—the material disclosed in the specification ('348 Patent 9:50-60)—having the same coating properties as non-flame-retardant latexes, were developed more than one year before the earliest effective filing date of the patents in suit.[3] Finally, conductive fabrics with flame-retardant knife coatings have been sold in the U.S. since at least the late 1980's.

None of this information was before the patent examiner who allowed the claims of the patents in suit.

---

[1] *See, e.g.,* W. Denney Freeston, Jr., Knife Coating of Porous Substrates, in Coated Fabrics Technology: A Collection of Papers from the Journal of Coated Fabrics 27 (Technomics 1971), at 27 ("No matter what the reason for the coating, and no matter how it is applied, control of the penetration of the viscous liquid into the porous substrate [fabric] is absolutely essential. Too little penetration can result in an inadequate bond; too much in excessive stiffening, reduced tearing strength, and an unacceptable appearance on the underside of the coated material."); Ex. 1 to the Declaration of William J. Marsden, Jr. in Support of Zippertubing's Answering Claim Constuction Brief. ("Marsden Decl."), submitted herewith.

[2] *See, e.g.,* John C. Zemlin, Development of a 100% Solids Urethane Fabric Coating Process, Coated Fabrics Technology, at pp. 105-107 Newton, MA, March 28-29,1973 (AATC 1973); Marsden Decl., Ex. 2.

[3] *See, e.g.,* N.A. Favstritsky and J.-L. Wang, Flame-Retardant Brominated Styrene-Based Polymers. X. Dibromostyrene Grafted Latexes, 69 J. Coating Tech. 39 (May 1997); Marsden Decl.. Ex. 3.

[4] Plaintiffs: (1) said they would no longer assert the '393 and '523 patents; (2) entered into settlement negotiations with Schlegel; (3) agreed to settle the Schlegel litigation without receiving any monetary payment; and (4) ultimately filed a unilateral covenant not to sue on *all* of the patents in suit. *See* Civil Action No. 1:07-cv-266-MPT at D.I. 38, including pp. 2-3, and exhibits thereto; *see also* Zippertubing's Opening Claim Construction Brief at n. 2, D.I. 44, and Marsden Decl. Ex. D. D.I. 45.

## IV. ARGUMENT

### A. "core member...is not V-0 rated;"
### "effective to afford [the] gasket a flame class rating of V-0"

Plaintiffs argue that "is not V-0 rated" means "which would not be accorded a V-0 standard rating under UL Standard No. 94 were the core member to be submitted for UL testing" (Plaintiffs Opening Brief at 11-13, D.I. 40), a definition they acknowledge requires no actual testing, while arguing that "effective...to afford [the] gasket a flame class rating of V-0" means "is V-0 rated," a definition they acknowledge requires actual testing.[5] (*Id.* at 18-20). Recognizing the inconsistency of their positions, plaintiffs drop a footnote to argue the "two positions are ... consistent." *Id.* at 20 n.6. In fact, plaintiffs have it exactly backward. Their proposals add limitations where they do not exist, while rendering other claim language superfluous.

To support their proposed reading of "is not V-0 rated," Plaintiffs improperly rely upon the declaration of William Flanders. Plaintiffs have not established that Mr. Flanders had the necessary expertise at the relevant time to be one of "ordinary skill in the art."[6] *See Voice Techs Group, Inc. v. VMC Systems, Inc.*, 164 F.3d 605, 610-11 (Fed. Cir. 1999) (excluding inventor declaration on claim construction for failure to establish expertise). Moreover, Mr. Flanders' declaration is not competent evidence on the subject of claim interpretation. *See, e.g., Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed.Cir.1997) ("The testimony of an inventor often is a self-serving, after-the-fact attempt to state what should have

---

[5] Zippertubing respectfully submits that Plaintiffs' proposed construction, "Plain and ordinary meaning applies...has been accorded a V-0 rating after testing for flammability under UL Standard No. 94" (Plaintiffs' Opening Brief at 7, D.I. 40), can be boiled down to "is V-0 rated."

[6] Mr. Flanders' statement that he has "nine (9) years of experience with the design and manufacture of foam-based EMI shielding gaskets" (Flanders Decl. ¶ 1, D.I. 41), assuming the nine years extends back from the date he signed his declaration, July 1, 2008, would indicate he had little or no experience with foam gaskets as of the earliest potential filing date, February 27, 1998, for the patents in suit.

3

been part of his or her patent application."); *Engel Indus., Inc. v. Lockformer Co.,* 96 F.3d 1398, 1405 (Fed.Cir.1996) ("[The inventor's] subjective intent is of little or no probative weight in determining the scope of the claims, except as documented in the prosecution history."); *Rocep Lusol Holding Ltd. v. Permatex, Inc.*, 470 F.Supp.2d 448, 454 (D.Del. 2007) (Jordan, J.) (same). Accordingly, the Flanders declaration is entitled to no weight and should be disregarded.

Even if the Flanders declaration were considered, it does not rebut Zippertubing's constructions. For example, the statement that "submission of a foam core for testing is not necessary to carry out the inventions of the patents-in-suit" (Flanders Decl. ¶6, D.I. 41) does not contradict the fact that the claims of the patents as issued contain ratings limitations. Similarly, Mr. Flanders' statements that "a foam core of a gasket could be submitted to UL for flammability testing under UL Standard No. 94" (*id.* ¶4) and "some commercially available foams...carry a V-0 rating under Standard No. 94," (*id.* ¶5), are consistent with Zippertubing's position that a core that "is not V-0 rated" must mean a core that has not been V-0 rated, as opposed to the cores referenced by Mr. Flanders.[7] Plaintiffs added this claim language in response to the examiner's rejection for lack of enablement, and cannot back away from it now. *See* Plaintiffs' Opening Brief D.I. 40 at 8.

Plaintiffs' unsupported attorney argument regarding the knowledge of one of skill in the art concerning the futility of submitting foam cores for V-0 testing (Plaintiffs' Opening Brief at 13, D.I. 40), should be given no weight.

The literal meaning of "effective...to afford [the] gasket a flame class rating of V-0" is that the gasket would receive such a rating if it were tested. In the absence of contrary definition

---

[7] Mr. Flanders cites no contemporaneous evidence that V ratings were available for foam cores at the time of the patent applications. The Rogers data sheet he relies upon (*see* Flanders Declaration, ¶¶ 4-5, D.I. 41; Nash Declaration, Ex. F, 2, D.I. 42) is dated 2007 or later. This supports the conclusion that the "V-0" core rating terminology in the claims is indefinite.

4

in the patent specification, the plain meaning cannot be defeated by Plaintiffs' pointing to an example in the specification of a gasket that received a V-0 rating or, for that matter, reliance on the alleged commercial advantages of receiving a V-0 rating. (*Id.* at 18-19).

### B.  "exterior surface"

Plaintiffs' position is to merely repeat the claim language. To that extent, it is not inconsistent with Zippertubing's construction. However, Plaintiffs' proposed construction is not sufficiently precise to construe the "thickness dimension" limitation discussed below.

### C.  "thickness dimension"

Plaintiffs' attempt to define this term by simply arguing that the claim language defines itself and that the more explicit definition in the specification should be ignored. Plaintiffs refer to the standard in *Phillips* that, "[u]nless ambiguous...claim terms are to be given their ordinary and customary meaning." (*Id.* at 14-15, D.I. 40, citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1310, 1312-13 (Fed. Cir. 2003) (en banc)). However, Plaintiffs' proposed reading does not withstand scrutiny under this standard. As noted in Zippertubing's Opening Brief, the precise location of the surface of a loosely woven fabric—which is composed of peaks and valleys formed by the top few layers of fibers—cannot be accurately defined. For a thin fabric, with relatively few layers of overlapping fibers, such as the fabrics discussed in the Example ('348 Patent, 10:28-42), this problem is exacerbated. For exactly this reason, the specification proposes a more precise definition of the thickness of the fabric which is shown as dimension $t_1$ in Figure 2. ('348 Patent, 5:42-45).

Plaintiffs' position would create an unacceptable ambiguity in the claim language and should be rejected in favor of the definition explicitly provided in the specification.

5

### D. "Coating at least a portion of the interior surface of said fabric member…"

Plaintiffs attempt to justify their construction, "covers at least a portion of the entirety of the inner surface," by arguing the independent meaning of "coating" without referring to the claim term "*surface*." It is not permissible to read words out of a claim in an attempt to support a preferred construction. *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 25 (Fed. Cir. 2000). Any ambiguity in the use of the verb "coating" read in isolation is eliminated when read in context of the phrase "coating…a surface" which makes clear that the coating must be applied to a surface. And here the surface is the surface of the *fabric*—not some other, interstitial surface.

Plaintiff's proposed construction does not comport with any of the embodiments disclosed in the specification. For example, Figures 5 and 6 show direct coating onto the surface of the fabric. Nowhere is an intervening layer of the type discussed by Plaintiffs (Plaintiffs' Opening Brief at 17, D.I. 40) disclosed or discussed.

### E. "penetrating…such that the exterior surface remains conductive"

Plaintiffs' proposed construction, "coating enters the fabric to a depth which is between the interior surface and exterior surface such that the electrical conductivity is not appreciably affected" adds the term "appreciably affected," which is nowhere defined in the patent specification. "Appreciably affected" is indefinite and does not give proper notice of the bounds of the patent claim. In contrast, Zippertubing's proposed construction, "a surface resistivity of about 0.1 Ω/sq. or less" ('348 Patent, 5:42-53), provides clear notice of what the claims cover. .

### F. about 30-50% "by weight" of one or more flame retardant additives; about 30% "by weight" of one or more flame retardant additives; about 50% "by dry weight" of one or more flame retardant additives.

Plaintiffs proposed constructions only serve to underline the indefiniteness of these limitations. The "weight" of a coating cannot be accurately defined without at least indicating

6

the physical state of the coating. Even then, one cannot determine the "dry weight" of a coating formed on a fabric in a finished gasket without some guidance as to how to measure that weight in the finished article. The patent specification contains no such guidance.

### 1.     "by weight"

Plaintiffs propose that one of ordinary skill would realize the "30-50%" by weight must mean the weight of the emulsion when applied because at one point in the specification reference is made to "30-50% by weight" in the context of the weight of the emulsion. (Plaintiffs' Opening Brief at 22, D.I. 40, citing '348 Patent, 6:35-38 and 6:60-68). Plaintiffs offer no legal authority to justify their selective importation of a limitation from the specification into the claims. Moreover, Plaintiffs' currently asserted claims are to a finished gasket, not to a step in the process for making that gasket.

Plaintiffs again rely on uncorroborated attorney statements to argue what one of ordinary skill would have understood "without doubt or ambiguity" the term "by weight" to mean. (Plaintiffs' Opening Brief at 22, D.I. 40). Tellingly, the affidavit of Mr. Flanders, which purports to indicate what one of ordinary skill would have understood in connection with the "V-0" terms, offers no opinion as to the meaning one of ordinary skill would attach to the "by weight" limitations. In fact, as explained in Zippertubing's Opening Brief, there is no dispute that the claimed additive percentages would vary markedly depending on whether wet weight or dry weight was used and, implicitly recognizing this, plaintiffs specified "dry weight" in claim 1 of the '095 patent. (*See* Zippertubing's Opening Brief at 14-15, D.I. 44.)

### 2.     "dry weight"

Plaintiffs' proposed construction referring to a "dried" or "otherwise hardened" flame retardant layer leaves open the problem of how to determine the dry weight of a film. The inclusion of the word dry also serves to draw attention to the indefiniteness of the "by weight"

7

limitations above. The inclusion of the term "dry weight" in the last patent to issue was a tacit admission by Plaintiffs that "by weight" taken on its own, unaccompanied by the modifier "wet' or "dry," was fatally indefinite.

If the Court determines that the term "dry weight" in the '095 patent is not indefinite, then it should follow that the "by weight" limitations are indefinite.

## V.   CONCLUSION

For all of the reasons set forth above and in its Opening Brief, Zippertubing respectfully requests that the Court adopt its proposed constructions.

Dated: July 15, 2008                **FISH & RICHARDSON P.C.**

By: */s/ William J. Marsden, Jr.*
William J. Marsden, Jr. (#2247)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
(302) 652-5070
marsden@fr.com

John B. Pegram
John D. Garretson
David Loretto
Michael Zoppo
FISH & RICHARDSON P.C.
Citigroup Center – 52nd Floor
153 East 53rd Street
New York, NY 10022-4611
(212) 765-5070

*Attorneys for Defendant*
*ZIPPERTUBING (JAPAN), LTD.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2008, I electronically filed with the Clerk of Court this **ANSWERING CLAIM CONSTRUCTION BRIEF OF DEFENDANT ZIPPERTUBING (JAPAN), LTD.** using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel. In addition, the document was caused to be served on the attorneys of record, at the following addresses and in the manner indicated::

## VIA EMAIL

Rudolf E. Hutz, Esquire
Francis DiGiovanni, Esquire
Steven A. Nash, Esquire (pro hac vice)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
rhutz@cblh.com
fdigiovanni@cblh.com
snash@cblh.com

*Attorneys for Plaintiffs*
PARKER-HANNIFIN CORPORATION
and PARKER INTANGIBLES, LLC

/s/ *William J. Marsden, Jr.*
William J. Marsden, Jr. (#2247)