IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PARKER-HANNIFIN CORPORATION, and
PARKER INTANGIBLES, LLC

    Plaintiff,

 v.

ZIPPERTUBING (JAPAN), LTD.,

    Defendant,

Civil Action No. 06-751-MPT

**MOTION OF DEFENDANT, ZIPPERTUBING (JAPAN), LTD., FOR LEAVE TO FILE
AN AMENDED ANSWER TO FIRST AMENDED COMPLAINT**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, defendant Zippertubing

(Japan), Ltd. ("Zippertubing") moves for leave to file an Amended Answer.  The Amended

Answer is attached hereto as Exhibit A.  A "redlined" copy of the Amended Answer that

indicates in what respects it differs from the Answer it amends is attached hereto as Exhibit B.

The Amended Answer incorporates the same affirmative defense of inequitable conduct that was

previously raised by Schlegel Corporation in its related case against plaintiffs Parker-Hannifin

Corporation and Parker Intangibles, LLC (No. 07-cv-266-MPT).  This motion is supported by

Zippertubing's Opening Brief file herewith.

WHEREFORE, Zippertubing respectfully requests that the Court grant this Motion for

Leave to File an Amended Answer.

Dated:  August 18, 2008                    FISH & RICHARDSON P.C.


                                           By:  */s/ William J. Marden, Jr.*
                                                William J. Marsden, Jr. (#2247)
                                                919 N. Market Street, Suite 1100
                                                P.O. Box 1114
                                                Wilmington, DE 19899-1114
                                                (302) 652-5070
                                                marsden@fr.com

                                                John B. Pegram
                                                John D. Garretson
                                                David Loretto
                                                153 E. 53rd Street, 52nd Floor
                                                New York, NY 10022
                                                (212) 765-5070

                                           Attorneys for Defendant
                                           ZIPPERTUBING (JAPAN), LTD.

## **LOCAL RULE 7.1.1 CERTIFICATE**

Counsel for Zippertubing has conferred with Plaintiffs as required by Delaware Local

Rule 7.1.1.  Plaintiffs have indicated that they will oppose this motion.


*/s/ William J. Marsden, Jr.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON AUGUST 18, 2008, I ELECTRONICALLY FILED

WITH THE CLERK OF COURT  MOTION OF DEFENDANT, ZIPPERTUBING

(JAPAN), LTD., FOR LEAVE TO FILE AN AMENDED ANSWER TO FIRST

AMENDED COMPLAINT USING CM/ECF which will send electronic notification of such

filing(s) to the following Delaware counsel.  in addition, the filing will also be sent via hand

delivery:

Rudolf E. Hutz, Esq.                         Attorneys for Plaintiff
Francis Digiovanni                           PARKER-HANNIFIN CORPORATION
Steven A. Nash
Connolly, Bove, Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19801


_/s/ William J. Marsden, Jr._

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PARKER-HANNIFIN CORPORATION, and
PARKER INTANGIBLES, LLC

                Plaintiff,

    v.

ZIPPERTUBING (JAPAN), LTD.,

                Defendant,

Civil Action No. 06-751-MPT

**AMENDED ANSWER TO FIRST AMENDED COMPLAINT OF DEFENDANT
ZIPPERTUBING (JAPAN), LTD.**

Defendant Zippertubing (Japan), Ltd. ("ZTJ") hereby answers the First Amended

Complaint of Plaintiffs Parker-Hannifin Corporation ("Parker") and Parker Intangibles, LLC

("PIL") as follows:

1.      ZTJ lacks knowledge or information sufficient to form a belief as to the truth of

the allegations contained in Paragraph 1 of the Complaint.

2.      ZTJ lacks knowledge or information sufficient to form a belief as to the truth of

the allegations contained in Paragraph 2 of the Complaint.

3.      ZTJ admits the allegations contained in Paragraph 3 of the Complaint.

**JURISDICTION AND VENUE**

4.      ZTJ admits subject matter jurisdiction of this Court as alleged in Paragraph 4 of

the Complaint and waives objection to personal jurisdiction.

5.      ZTJ waives objection to venue of this Court as alleged in Paragraph 5 of the

Complaint.

## THE PATENTS

6.      ZTJ admits that U.S. Patent No. 6,387,523 ("the '523 patent") issued on May 14, 2002, but denies that it was duly and legally issued.  ZTJ is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 6 of the Complaint.

7.      ZTJ admits that U.S. Patent No. 6,521,348 ("the '348 patent") issued on February 18, 2003, but denies that it was duly and legally issued.  ZTJ is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 7 of the Complaint.

8.      ZTJ admits that U.S. Patent No. 6,716,536 ("the '536 patent") issued on April 6, 2004, but denies that it was duly and legally issued.  ZTJ is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 8 of the Complaint.

9.      ZTJ admits that U.S. Patent No. 6,777,095 ("the '095 patent") issued on August 17, 2004, but denies that it was duly and legally issued.  ZTJ is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 9 of the Complaint.

## PATENT INFRINGEMENT

10.      ZTJ denies each and every allegation of Paragraph 10 of the Complaint.

11.      ZTJ denies each and every allegation of Paragraph 11 of the Complaint.

## AFFIRMATIVE DEFENSES

12.      ZTJ has not infringed and is not infringing any claim of the '523 patent, the '348 patent, the '536 patent or the '095 patent, either directly or by inducing or contributing to their infringement by others.

2

13.    ZJT is not liable for infringement by reason of any acts in the United States because its activities in connection with the accused products take place outside the United States.

14.    The claims of the '523 patent, the '348 patent, the '536 patent and the '095 patent are each invalid because they fail to satisfy one or more of the conditions for patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.

15.    The '523 patent, the '348 patent, the '536 patent and the '095 patent are invalid as a result of obviousness-type double patenting.

16.    Parker and PIL are estopped by virtue of amendments and statements made during the course of prosecution of the '523 patent, the '348 patent, the '536 patent and the '095 patent from obtaining any construction of the claims of the patents that could cover any of ZTJ's products and the methods by which those products are made.

17.    On information and belief, Parker and PIL have failed to comply with the provisions of 35 U.S.C. § 287(a) and are therefore barred from recovery of any damages prior to service of the Complaint.

18.    Upon information and belief, Parker's '523, '348, '536 and '095 patents ("Parker Patents") are unenforceable, because of at least three instances of inequitable conduct by applicants in the United States Patent and Trademark Office ("PTO" or "Patent Office"), each of which separately, independently and collectively establishes a basis for unenforceability. The particular bases for the inequitable conduct defenses are as follows:

a.    Erma Cameron was the PTO examiner ("Examiner Cameron") for all of the applications leading to the Parker Patents (hereinafter the applications leading to and the resultant Parker Patents are collectively referred to as the "Cameron Applications").

3

b.      John A. Molnar, Jr. ("Molnar") was the prosecuting attorney for each of the Cameron Applications,

c.      Michael H. Bunyan ("Bunyan") and William I. Flanders ("Flanders") are the named inventors in each of the Cameron Applications.

d.      Upon information and belief, Molnar, Bunyan, and Flanders were at all times during the prosecution of these applications employed by Parker Hannifin Corporation.

e.      The history and relationship of the Cameron Applications is as follows:

The '523 patent issued on May 14, 2002 as the result of patent application No. 09/883,785 filed on June 18, 2001 as a continuation of patent application No. 09/250,338 filed on February 16, 1999, now U.S. Pat. No. 6,248,393 ("the '393 patent), and claiming priority from provisional application No. 60/076,370 filed on February 27, 1998.

The '348 patent issued on February 18, 2003 as the result of patent application No. 10/142,803 filed on May 9, 2002 as a continuation of application No. 09/883,785, filed on June 18, 2001, now Pat. No. 6,387,523, which is a continuation of application No. 09/250,338, filed on February 16, 1999, now Pat. No. 6,428,393, which claims priority from provisional application No. 60/076,370 filed on February 27, 1998.

The '536 patent issued April 6, 2004 as the result of patent application No. 10/318,609 filed on December 11, 2002 as a continuation of application No. 10/142,803, filed on May 9, 2002, now Pat. No. 6,521,348, which is a continuation of application No. 09/883,785, filed on June 18, 2001, now Pat. No. 6,387,523, which is a continuation of application No. 09/250,338, filed on February 16, 1999, now Pat. No. 6,248,393, which claims priority from provisional application No. 60/076,370 filed on February 27, 1998.

The '095 patent issued August 17, 2004 as the result of patent application No. 10/753,016 filed on January 7, 2004 as a continuation of application No. 10/318,609, filed on December 11, 2002, now Pat. No. 6,716,536, which is a continuation of application No. 10/142,803, filed on May 9, 2002, now Pat. No. 6,521,348, which is a continuation of application No. 09/883,785, filed on June 18, 2001, now Pat. No. 6,387,523, which is a continuation of application No. 09/250,338, filed on February 16, 1999, now Pat. No. 6,248,393, which claims priority from provisional application No. 60/076,370 filed on February 27, 1998.

The application sequence is shown in the following chart:



Patent App. Serial No. 10/753,016
Filed Jan. 7, 2004
(issued as '095 patent on Aug. 17, 2004)

f.      At the time the first Cameron Application was filed, the PTO regulations,  37

C.F.R. § 1.56 (1992), provided in part, as follows:

Section 1.56 Duty to disclose information material to patentability.
(a) A patent by its very nature is affected with a public interest. The public
interest is best served, and the most effective patent examination occurs when, at
the time an application is being examined, the Office is aware of and evaluates the
teachings of all information material to patentability. Each individual associated
with the filing and prosecution of a patent application has a duty of candor and
good faith in dealing with the Office, which includes a duty to disclose to the
Office all information known to that individual to be material to patentability as
defined in this section. The duty to disclose information exists with respect to
each pending claim until the claim is cancelled or withdrawn from consideration,
or the application becomes abandoned. Information material to the patentability of
a claim that is cancelled or withdrawn from consideration need not be submitted if
the information is not material to the patentability of any claim remaining under
consideration in the application. There is no duty to submit information which is
not material to the patentability of any existing claim. The duty to disclose all
information known to be material to patentability is deemed to be satisfied if all
information known to be material to patentability of any claim issued in a patent
was cited by the Office or submitted to the Office in the manner prescribed by
Secs. 1.97(b)-(d) and 1.98. However, no patent will be granted on an application
in connection with which fraud on the Office was practiced or attempted or the
duty of disclosure was violated through bad faith or intentional misconduct. The
Office encourages applicants to carefully examine:
        (1) Prior art cited in search reports of a foreign patent office in a
counterpart application, and
        (2) The closest information over which individuals associated with the
filing or prosecution of a patent application believe any pending claim patentably
defines, to make sure that any material information contained therein is disclosed
to the Office.

(b) Under this section, information is material to patentability when it is not
cumulative to information already of record or being made of record in the
application, and
        (1) It establishes, by itself or in combination with other information, a
prima facie case of unpatentability of a claim; or
        (2) It refutes, or is inconsistent with, a position the applicant takes in:
        (i) Opposing an argument of unpatentability relied on by the Office, or
        (ii) Asserting an argument of patentability.

6

A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

(c) Individuals associated with the filing or prosecution of a patent application within the meaning of this section are:
(1) Each inventor named in the application;
(2) Each attorney or agent who prepares or prosecutes the application; and
(3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application.
(d) Individuals other than the attorney, agent or inventor may comply with this section by disclosing information to the attorney, agent, or inventor.

g.    The above provisions of Rule 56 continue to this day, and Rule 56 has been amended only to add an additional sub-section (e) [65 FR 54666, Sept. 8, 2000], which provides:

(e) In any continuation-in-part application, the duty under this section includes the duty to disclose to the Office all information known to the person to be material to patentability, as defined in paragraph (b) of this section, which became available between the filing date of the prior application and the national or PCT international filing date of the continuation-in-part application.

h.    Hereinafter, the terms "Applicant" or "Applicants" means anyone under a duty to disclose material information to the PTO pursuant to 37 C.F.R. § 1.56, including Molnar, Bunyan, Flanders and any other person substantively involved in the preparation or prosecution of one or more of the Cameron Applications.

i.    On October 22, 1998, in addition to the Cameron Applications, Applicants filed provisional application No. 60/105,271. This provisional was converted into application No. 09/412,059 on October 4, 1999. The prosecuting attorney on behalf of Parker was Molnar and the named inventor is Bunyan. The PTO examiner for these applications was Duc Truong (Examiner Troung). This application issued on June 25, 2002 as U.S. Patent No. 6,410,137 ("the

'137 Patent"). Collectively this provisional, the converted application, and the '137 Patent will be referred to hereinafter as "Truong Application."

      j.     The timeline of the Applicants' Cameron and Truong Applications is as follows:

| Cameron Applications Timeline | Truong Application Timeline |
|---|---|
| Feb. 27, 1998<br>Filed Provisional Patent App.<br>Serial No. 60/076,370 | |
| | Oct. 22, 1998<br>Filed Provisional Patent App.<br>Serial No. 60/105,271 |
| Feb. 16, 1999<br>Patent App. Serial No. 09/250,338<br>(issued as '393 patent on June 19, 2001) | |
| | Oct. 4, 1999<br>Patent App. Serial No. 09/250,338<br>(issued as '137 patent on June 25, 2002) |
| June 18, 2001<br>Filed continuation Patent App.<br>Serial No. 09/883,785<br>(issued as '523 patent on May 14, 2002) | |
| May 9, 2002<br>Filed continuation Patent App.<br>Serial No. 10/142,803<br>(issued as '348 patent on Feb. 18, 2003) | |
| Dec. 11, 2002<br>Filed continuation Patent App.<br>Serial No. 10/318,609<br>(issued as '536 patent on Apr. 6, 2004) | |
| Jan. 7, 2004<br>Filed continuation Patent App.<br>Serial No. 10/753,016<br>(issued as '095 patent on Aug. 17, 2004) | |

      k.     The Truong Application, as filed October 22, 1998, characterized the invention as follows:

[T]he present invention is directed to an intumescent, flame-retardant pressure-sensitive adhesive (PSA) composition particularly adapted for use in foil or fabric-over-foam EMI shielding gasket constructions for bonding an electrically-conductive foam or fabric sheath or jacket to a polyurethane or other foam core. … Gaskets of such construction advantageously have been observed to achieve a UL94 rating of V-0 over a range of cross-section

('137 patent, Col 3 lines 27-42).

l.     The above statement of the invention from the Truong Application is nearly

identical to the statement of the invention from the Cameron Applications:

The present invention is directed to an electrically-conductive, flame retardant material for use in fabric-over-foam EMI shielding gaskets, and to a method of manufacturing the same. In having a layer of a flame retardant coating applied to one side of an electrically-conductive, generally porous fabric, the material of the invention affords UL94 V-0 protection when used as a jacketing in a fabric-over-foam gasket construction.

('393 patent, Col 3 lines 25-32).

m.     The Cameron Applications define "flame retardant" gaskets as those "achieving a

rating of V-0 under UL Std. No. 94, 'Tests for Flammability of Plastic Materials for Parts in

Devices and Appliances' (1991)"     .

n.     The Truong and Cameron Applications are both directed to an EMI shielding

material that meets the Underwriters Laboratory 94 V-0 vertical burn rating standard for flame

retardance ("UL 94 V-0") by applying a layer with flame retardant additives between an exterior

conductive fabric/sheath and an interior foam core.

o.     This similarity, standing alone, makes the Truong Application material

information to the prosecution of the Cameron Applications that should have been disclosed to

the PTO.

p.     Upon information and belief, the existence of the co-pending Truong Application

was never disclosed to Examiner in the Cameron Applications.

9

q.    The Truong Application further discloses that a "unique combination of flame retardant additives" is required to achieve a rating of V-0 under UL Std. No. 94. The three components of this mixture are:

> "a halogenated first flame retardant component, an metal oxide-based second flame retardant component, and a filler component of expandable, intercalated graphite particles."

('137 patent, Col 3 lines 52-55).

r.    The Truong Application further teaches that it was "unexpected" that this three-part mixture was "critical" to achieve a UL 94 V-0 rating:

> [t]he ... results confirm that the EMI shielding material of the present invention is UL94 V-0 compliant when used as a jacketing in a fabric-over-foam gasket construction. Unexpectedly, it was found that the use of a unique combination of three different flame retardant additives was critical in the use of any of the additives alone or without one of the other additives was insufficient to meet the required UL-V0 criteria.

('137 patent, Col. 12 lines 21-28).  On January 25, 2002, Molnar filed an Amendment and Response in which he distinguished certain prior art on the sole basis that the prior art did not disclose the graphite component and further argued, as a basis for patentability, that:

> [u]nexpectedly, it has been observed that such flame retardant additive combination functions synergistic. In this regard, each of the components separately has been observed not to impart flame retardancy to the PSA composition effective to achieve UL 94 V-0 protection within a fabric or foil over foam EMI shielding gasket construction.

s.    The above representation in the Truong Application manifests that Applicants not only knew that a special three-part mixture was critical to achieving a UL-V0 rating, but that Applicants possessed test data and results, as of October 22, 1998, which demonstrated that halogenated or metal-oxide based flame retardant additives in the interior layer between the fabric/sheath and foam, individually or in combination with each other, were insufficient to

produce a product meeting the UL 94 V-0 criteria.  The above data and results identified in the

Truong Application is hereafter referred to as the "Test Results."

       t.        Despite the representation in the Truong Application that a graphite-based

chemical mixture of flame retardant additives was necessary to achieve a V-0 rating, the

Applicant's subsequent February 16, 1999 application, Serial No. 09/250,338, and subsequent

Cameron Applications do not mention graphite and do not disclose that graphite was necessary

to achieve a V-0 rating.  In direct contradiction to their representations in the Truong

Application, the Applicants represented in the Cameron Applications that only a single flame

retardant additive was required to obtain the preferred results:

> Flame retardancy may be imparted by loading the emulsion with … one or more
> conventional flame retardant additives such as aluminum hydrate, antimony
> trioxide, phosphate esters, or halogenated compounds such as polybrominated
> diphenyl oxides.

('393 patent, Col. 6 lines 59-63).

       u.  Further, despite Applicant's representation in the Truong Application regarding

Applicant's Test Results, their subsequent February 16, 1999 application, Serial No. 09/250,338,

and subsequent Cameron Applications do not disclose that formulations without graphite failed

to achieve a V-0 rating.

       v.  The Test Results are inconsistent with the Cameron Applications that describe

"preferred formulations" without mentioning either graphite or that a three-part formulation was

critical for UL-V0 rating.  The Test Results were undisclosed even though the Cameron

Applications included at least three issued claims directed to the chemical composition of the

interior layer:

> wherein said one or more flame retardant additives are selected from the group
> consisting of aluminum hydrate, antimony trioxide, phosphate esters, and
> halogenated compounds

11

('348 patent claim 18; '536 patent claim 9; and '095 patent claim 9).

      w.     The disclosure of the three-part formulation in the Truong Application and the Test Results should have been disclosed to the Examiner in the Cameron Applications, because such information would have been considered important by a reasonable examiner in determining issues of patentability, including whether Applicants had met the enablement and best mode requirements of 35 U.S.C. § 112.

      x.     In an August 7, 2001 Office Action in the Truong Application, The Patent Office rejected all pending claims in view of a prior art patent to Petras, U.S. Patent No. 4,061,826 (hereinafter "the Petras Prior Art"). The Petras Prior Art discloses the use of both halogenated and a metal oxide flame retardant additives in a coating to impart flame retardance to an EMI shielding material. Examiner Truong explained:

> Claims 1-27 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Petras et al in view of Krassowski ... Petras discloses halogen containing flame retardant pressure sensitive adhesive tapes can be used to cover certain magnet wire wound components of electrical or electronic equipment. ... The reference further discloses othe [sic] additives ... such as antimony oxide.

On January 25, 2002, Molnar filed an Amendment and Response in which he distinguished the Petras Prior Art on the sole basis that it does not disclose the graphite component of the flame-retardant composition.

      y.     In view of the fact that another examiner had rejected claims in a related application based on the Petras Prior Art, Petras was clearly material information to the prosecution of the Cameron Applications that should have been disclosed to the PTO. Petras was not cumulative to any other information before the Examiner, and it discloses EMI shielding material with flame retardance imparted by a coating that includes halogenated and metal oxides

flame retardant additives as claimed in at least some of the pending and issued claims of the Cameron Applications..

z.    The Petras Prior Art was never disclosed in the Cameron Applications.

aa.    Despite the materiality of the Truong Application, the Test Results, and the Petras Prior Art, Applicants did not disclose this material information. Upon information and belief, Applicants failures to disclose the Truong Application, the Test Results, and the Petras Prior Art, were done with deceptive intent, or, at least, with such gross negligence as to be equivalent to deceptive intent.

bb.    Each of the Parker Patents is unenforceable in view of the conduct set forth above. Each of the breaches of the Applicants' duty of good faith and candor, individually and collectively, constitute a basis for rendering unenforceable each of the Parker Patents, and the totality of Applicants' conduct demonstrates inequitable conduct. Each Parker Patent after the first is further unenforceable in view of the infectious unenforceability of the inequitable conduct during the course of the prosecution of the Cameron Applications.

## RESERVATION OF RIGHTS

19.    ZTJ is still investigating this matter and has not yet had an opportunity to conduct any discovery, and therefore reserves the right to raise such additional defenses as may be appropriate upon further investigation and discovery.

**WHEREFORE,** ZTJ prays as follows:

A.    That Parker and PIL take nothing by reason of their First Amended Complaint, and that judgment be entered for ZTJ;

B.    That the '523 patent, the '348 patent, the '536 patent and the '095 patent, and each and every claim thereof be adjudged to be invalid, and that ZTJ be adjudged not to infringe such patent;

13

C.    That the Court declare this an exceptional case and award ZTJ its attorneys' fees

and costs pursuant to 35 U.S.C. § 285; and

D.    That the Court grant such other and further relief as is just and proper.

Dated:  August 18, 2008                    FISH & RICHARDSON P.C.


                                           By:  */s/ William J. Marsden, Jr.*
                                                William J. Marsden, Jr. (#2247)
                                                919 N. Market Street, Suite 1100
                                                P.O. Box 1114
                                                Wilmington, DE 19899-1114
                                                (302) 652-5070
                                                marsden@fr.com


                                                *Attorneys for Defendant*
                                                *ZIPPERTUBING (JAPAN), LTD.*

Of Counsel:

     John B. Pegram
     John D. Garretson
     David Loretto
     Michael Zoppo
     FISH & RICHARDSON P.C.
     Citigroup Center – 52nd Floor
     153 East 53rd Street
     New York, NY 10022-4611
     (212) 765-5070
     mailto:marsden@fr.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2008, I electronically filed with the Clerk of Court this

AMENDED **ANSWER TO FIRST AMENDED COMPLAINT OF DEFENDANT**

**ZIPPERTUBING (JAPAN), LTD.** using CM/ECF which will send electronic notification of

such filing(s) to the following Delaware counsel.  In addition, the document was caused to be

served on the attorneys of record, at the following addresses and in the manner indicated::

### VIA EMAIL

Rudolf E. Hutz, Esquire
Francis DiGiovanni, Esquire
Steven A. Nash, Esquire (pro hac vice)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
rhutz@cblh.com
fdigiovanni@cblh.com
snash@cblh.com

*Attorneys for Plaintiffs*
*PARKER-HANNIFIN CORPORATION*
*and PARKER INTANGIBLES, LLC*

 */s/ William J. Marsden, Jr.*
William J. Marsden (#2247)

Amended answer 8-18.doc

**EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

PARKER-HANNIFIN CORPORATION, and
PARKER INTANGIBLES, LLC

               Plaintiff,

     v.

ZIPPERTUBING (JAPAN), LTD.,

               Defendant,

Civil Action No. 06-751-~~JJF~~MPT

### AMENDED ANSWER TO FIRST AMENDED COMPLAINT OF DEFENDANT ZIPPERTUBING (JAPAN), LTD.

Defendant Zippertubing (Japan), Ltd. ("ZTJ") hereby answers the First Amended Complaint of Plaintiffs Parker-Hannifin Corporation ("Parker") and Parker Intangibles, LLC ("PIL") as follows:

1.     ZTJ lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint.

2.     ZTJ lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the Complaint.

3.     ZTJ admits the allegations contained in Paragraph 3 of the Complaint.

### JURISDICTION AND VENUE

4.     ZTJ admits subject matter jurisdiction of this Court as alleged in Paragraph 4 of the Complaint and waives objection to personal jurisdiction.

5.     ZTJ waives objection to venue of this Court as alleged in Paragraph 5 of the Complaint.

**THE PATENTS**

6.     ZTJ admits that U.S. Patent No. 6,387,523 ("the '523 patent") issued on May 14, 2002, but denies that it was duly and legally issued.  ZTJ is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 6 of the Complaint.

7.     ZTJ admits that U.S. Patent No. 6,521,348 ("the '348 patent") issued on February 18, 2003, but denies that it was duly and legally issued.  ZTJ is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 7 of the Complaint.

8.     ZTJ admits that U.S. Patent No. 6,716,536 ("the '536 patent") issued on April 6, 2004, but denies that it was duly and legally issued.  ZTJ is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 8 of the Complaint.

9.     ZTJ admits that U.S. Patent No. 6,777,095 ("the '095 patent") issued on August 17, 2004, but denies that it was duly and legally issued.  ZTJ is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 9 of the Complaint.

**PATENT INFRINGEMENT**

10.     ZTJ denies each and every allegation of Paragraph 10 of the Complaint.

11.     ZTJ denies each and every allegation of Paragraph 11 of the Complaint.

**AFFIRMATIVE DEFENSES**

12.     ZTJ has not infringed and is not infringing any claim of the '523 patent, the '348 patent, the '536 patent or the '095 patent, either directly or by inducing or contributing to their infringement by others.

13.    ZJT is not liable for infringement by reason of any acts in the United States because its activities in connection with the accused products take place outside the United States.

14.    The claims of the '523 patent, the '348 patent, the '536 patent and the '095 patent are each invalid because they fail to satisfy one or more of the conditions for patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.

15.    The '523 patent, the '348 patent, the '536 patent and the '095 patent are invalid as a result of obviousness-type double patenting.

16.    Parker and PIL are estopped by virtue of amendments and statements made during the course of prosecution of the '523 patent, the '348 patent, the '536 patent and the '095 patent from obtaining any construction of the claims of the patents that could cover any of ZTJ's products and the methods by which those products are made.

17.    On information and belief, Parker and PIL have failed to comply with the provisions of 35 U.S.C. § 287(a) and are therefore barred from recovery of any damages prior to service of the Complaint.

18.    Upon information and belief, Parker's '523, '348, '536 and '095 patents ("Parker Patents") are unenforceable, because of at least three instances of inequitable conduct by applicants in the United States Patent and Trademark Office ("PTO" or "Patent Office"), each of which separately, independently and collectively establishes a basis for unenforceability. The particular bases for the inequitable conduct defenses are as follows:

a.    Erma Cameron was the PTO examiner ("Examiner Cameron") for all of the applications leading to the Parker Patents (hereinafter the applications leading to and the resultant Parker Patents are collectively referred to as the "Cameron Applications").

3

b.    John A. Molnar, Jr. ("Molnar") was the prosecuting attorney for each of the Cameron Applications,

c.    Michael H. Bunyan ("Bunyan") and William I. Flanders ("Flanders") are the named inventors in each of the Cameron Applications.

d.    Upon information and belief, Molnar, Bunyan, and Flanders were at all times during the prosecution of these applications employed by Parker Hannifin Corporation.

e.    The history and relationship of the Cameron Applications is as follows:

The '523 patent issued on May 14, 2002 as the result of patent application No. 09/883,785 filed on June 18, 2001 as a continuation of patent application No. 09/250,338 filed on February 16, 1999, now U.S. Pat. No. 6,248,393 ("the '393 patent), and claiming priority from provisional application No. 60/076,370 filed on February 27, 1998.

The '348 patent issued on February 18, 2003 as the result of patent application No. 10/142,803 filed on May 9, 2002 as a continuation of application No. 09/883,785, filed on June 18, 2001, now Pat. No. 6,387,523, which is a continuation of application No. 09/250,338, filed on February 16, 1999, now Pat. No. 6,428,393, which claims priority from provisional application No. 60/076,370 filed on February 27, 1998.

The '536 patent issued April 6, 2004 as the result of patent application No. 10/318,609 filed on December 11, 2002 as a continuation of application No. 10/142,803, filed on May 9, 2002, now Pat. No. 6,521,348, which is a continuation of application No. 09/883,785, filed on June 18, 2001, now Pat. No. 6,387,523, which is a continuation of application No. 09/250,338, filed on February 16, 1999, now Pat. No. 6,248,393, which claims priority from provisional application No. 60/076,370 filed on February 27, 1998.

4

The '095 patent issued August 17, 2004 as the result of patent application No. 10/753,016 filed on January 7, 2004 as a continuation of application No. 10/318,609, filed on December 11, 2002, now Pat. No. 6,716,536, which is a continuation of application No. 10/142,803, filed on May 9, 2002, now Pat. No. 6,521,348, which is a continuation of application No. 09/883,785, filed on June 18, 2001, now Pat. No. 6,387,523, which is a continuation of application No. 09/250,338, filed on February 16, 1999, now Pat. No. 6,248,393, which claims priority from provisional application No. 60/076,370 filed on February 27, 1998.

The application sequence is shown in the following chart:



Provisional Patent App. Serial No. 60/076,370
Filed Feb. 27, 1998

(converted)

Patent App. Serial No. 09/250,338
Filed Feb. 16, 1999
(issued as '393 patent on June 19, 2001)

(continuation)

Patent App. Serial No. 09/883,785
Filed June 18, 2001
(issued as '523 patent on May 14, 2002)

(continuation)

Patent App. Serial No. 10/142,803
Filed May 9, 2002
(issued as '348 patent on Feb. 18, 2003)

(continuation)

Patent App. Serial No. 10/318,609
Filed Dec. 11, 2002
(issued as '536 patent on Apr. 6, 2004)

(continuation)

> Patent App. Serial No. 10/753,016
> Filed Jan. 7, 2004
> (issued as '095 patent on Aug. 17, 2004)

f.      At the time the first Cameron Application was filed, the PTO regulations,  37

C.F.R. § 1.56 (1992), provided in part, as follows:

Section 1.56 Duty to disclose information material to patentability.
(a) A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability. Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. Information material to the patentability of a claim that is cancelled or withdrawn from consideration need not be submitted if the information is not material to the patentability of any claim remaining under consideration in the application. There is no duty to submit information which is not material to the patentability of any existing claim. The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by Secs. 1.97(b)-(d) and 1.98. However, no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct. The Office encourages applicants to carefully examine:
    (1) Prior art cited in search reports of a foreign patent office in a counterpart application, and
    (2) The closest information over which individuals associated with the filing or prosecution of a patent application believe any pending claim patentably defines, to make sure that any material information contained therein is disclosed to the Office.

(b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and
    (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
    (2) It refutes, or is inconsistent with, a position the applicant takes in:
        (i) Opposing an argument of unpatentability relied on by the Office, or
        (ii) Asserting an argument of patentability.

6

A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

(c) Individuals associated with the filing or prosecution of a patent application within the meaning of this section are:
 (1) Each inventor named in the application;
 (2) Each attorney or agent who prepares or prosecutes the application; and
 (3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application.
(d) Individuals other than the attorney, agent or inventor may comply with this section by disclosing information to the attorney, agent, or inventor.

g.    The above provisions of Rule 56 continue to this day, and Rule 56 has been amended only to add an additional sub-section (e) [65 FR 54666, Sept. 8, 2000], which provides:

(e) In any continuation-in-part application, the duty under this section includes the duty to disclose to the Office all information known to the person to be material to patentability, as defined in paragraph (b) of this section, which became available between the filing date of the prior application and the national or PCT international filing date of the continuation-in-part application.

h.    Hereinafter, the terms "Applicant" or "Applicants" means anyone under a duty to disclose material information to the PTO pursuant to 37 C.F.R. § 1.56, including Molnar, Bunyan, Flanders and any other person substantively involved in the preparation or prosecution of one or more of the Cameron Applications.

i.    On October 22, 1998, in addition to the Cameron Applications, Applicants filed provisional application No. 60/105,271. This provisional was converted into application No. 09/412,059 on October 4, 1999. The prosecuting attorney on behalf of Parker was Molnar and the named inventor is Bunyan. The PTO examiner for these applications was Duc Truong (Examiner Troung). This application issued on June 25, 2002 as U.S. Patent No. 6,410,137 ("the

'137 Patent"). Collectively this provisional, the converted application, and the '137 Patent will be referred to hereinafter as "Truong Application."

    j.    The timeline of the Applicants' Cameron and Truong Applications is as follows:

| Cameron Applications Timeline | Truong Application Timeline |
|---|---|
| Feb. 27, 1998<br>Filed Provisional Patent App.<br>Serial No. 60/076,370<br><br>Feb. 16, 1999<br>Patent App. Serial No. 09/250,338<br>(issued as '393 patent on June 19, 2001)<br><br>June 18, 2001<br>Filed continuation Patent App.<br>Serial No. 09/883,785<br>(issued as '523 patent on May 14, 2002)<br><br>May 9, 2002<br>Filed continuation Patent App.<br>Serial No. 10/142,803<br>(issued as '348 patent on Feb. 18, 2003)<br><br>Dec. 11, 2002<br>Filed continuation Patent App.<br>Serial No. 10/318,609<br>(issued as '536 patent on Apr. 6, 2004)<br><br>Jan. 7, 2004<br>Filed continuation Patent App.<br>Serial No. 10/753,016<br>(issued as '095 patent on Aug. 17, 2004) | Oct. 22, 1998<br>Filed Provisional Patent App.<br>Serial No. 60/105,271<br><br>Oct. 4, 1999<br>Patent App. Serial No. 09/250,338<br>(issued as '137 patent on June 25, 2002) |

    k.    The Truong Application, as filed October 22, 1998, characterized the invention as follows:

[T]he present invention is directed to an intumescent, flame-retardant pressure-sensitive adhesive (PSA) composition particularly adapted for use in foil or fabric-over-foam EMI shielding gasket constructions for bonding an electrically-conductive foam or fabric sheath or jacket to a polyurethane or other foam core. … Gaskets of such construction advantageously have been observed to achieve a UL94 rating of V-0 over a range of cross-section

('137 patent, Col 3 lines 27-42).

l.      The above statement of the invention from the Truong Application is nearly identical to the statement of the invention from the Cameron Applications:

The present invention is directed to an electrically-conductive, flame retardant material for use in fabric-over-foam EMI shielding gaskets, and to a method of manufacturing the same. In having a layer of a flame retardant coating applied to one side of an electrically-conductive, generally porous fabric, the material of the invention affords UL94 V-0 protection when used as a jacketing in a fabric-over-foam gasket construction.

('393 patent, Col 3 lines 25-32).

m.      The Cameron Applications define "flame retardant" gaskets as those "achieving a rating of V-0 under UL Std. No. 94, 'Tests for Flammability of Plastic Materials for Parts in Devices and Appliances' (1991)"

n.      The Truong and Cameron Applications are both directed to an EMI shielding material that meets the Underwriters Laboratory 94 V-0 vertical burn rating standard for flame retardance ("UL 94 V-0") by applying a layer with flame retardant additives between an exterior conductive fabric/sheath and an interior foam core.

o.      This similarity, standing alone, makes the Truong Application material information to the prosecution of the Cameron Applications that should have been disclosed to the PTO.

p.      Upon information and belief, the existence of the co-pending Truong Application was never disclosed to Examiner in the Cameron Applications.

q.    The Truong Application further discloses that a "unique combination of flame retardant additives" is required to achieve a rating of V-0 under UL Std. No. 94. The three components of this mixture are:

"a halogenated first flame retardant component, an metal oxide-based second flame retardant component, and a filler component of expandable, intercalated graphite particles."

('137 patent, Col 3 lines 52-55).

r.    The Truong Application further teaches that it was "unexpected" that this three-part mixture was "critical" to achieve a UL 94 V-0 rating:

[t]he ... results confirm that the EMI shielding material of the present invention is UL94 V-0 compliant when used as a jacketing in a fabric-over-foam gasket construction. Unexpectedly, it was found that the use of a unique combination of three different flame retardant additives was critical in the use of any of the additives alone or without one of the other additives was insufficient to meet the required UL-V0 criteria.

('137 patent, Col. 12 lines 21-28).  On January 25, 2002, Molnar filed an Amendment and Response in which he distinguished certain prior art on the sole basis that the prior art did not disclose the graphite component and further argued, as a basis for patentability, that:

[u]nexpectedly, it has been observed that such flame retardant additive combination functions synergistic. In this regard, each of the components separately has been observed not to impart flame retardancy to the PSA composition effective to achieve UL 94 V-0 protection within a fabric or foil over foam EMI shielding gasket construction.

s.    The above representation in the Truong Application manifests that Applicants not only knew that a special three-part mixture was critical to achieving a UL-V0 rating, but that Applicants possessed test data and results, as of October 22, 1998, which demonstrated that halogenated or metal-oxide based flame retardant additives in the interior layer between the fabric/sheath and foam, individually or in combination with each other, were insufficient to

produce a product meeting the UL 94 V-0 criteria.  The above data and results identified in the Truong Application is hereafter referred to as the "Test Results."

t.      Despite the representation in the Truong Application that a graphite-based chemical mixture of flame retardant additives was necessary to achieve a V-0 rating, the Applicant's subsequent February 16, 1999 application, Serial No. 09/250,338, and subsequent Cameron Applications do not mention graphite and do not disclose that graphite was necessary to achieve a V-0 rating.  In direct contradiction to their representations in the Truong Application, the Applicants represented in the Cameron Applications that only a single flame retardant additive was required to obtain the preferred results:

> Flame retardancy may be imparted by loading the emulsion with … one or more conventional flame retardant additives such as aluminum hydrate, antimony trioxide, phosphate esters, or halogenated compounds such as polybrominated diphenyl oxides.

('393 patent, Col. 6 lines 59-63).

u.   Further, despite Applicant's representation in the Truong Application regarding Applicant's Test Results, their subsequent February 16, 1999 application, Serial No. 09/250,338, and subsequent Cameron Applications do not disclose that formulations without graphite failed to achieve a V-0 rating.

v.   The Test Results are inconsistent with the Cameron Applications that describe "preferred formulations" without mentioning either graphite or that a three-part formulation was critical for UL-V0 rating.  The Test Results were undisclosed even though the Cameron Applications included at least three issued claims directed to the chemical composition of the interior layer:

> wherein said one or more flame retardant additives are selected from the group consisting of aluminum hydrate, antimony trioxide, phosphate esters, and halogenated compounds

11

('348 patent claim 18; '536 patent claim 9; and '095 patent claim 9).

w.    The disclosure of the three-part formulation in the Truong Application and the Test Results should have been disclosed to the Examiner in the Cameron Applications, because such information would have been considered important by a reasonable examiner in determining issues of patentability, including whether Applicants had met the enablement and best mode requirements of 35 U.S.C. § 112.

x.    In an August 7, 2001 Office Action in the Truong Application, The Patent Office rejected all pending claims in view of a prior art patent to Petras, U.S. Patent No. 4,061,826 (hereinafter "the Petras Prior Art"). The Petras Prior Art discloses the use of both halogenated and a metal oxide flame retardant additives in a coating to impart flame retardance to an EMI shielding material. Examiner Truong explained:

> Claims 1-27 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Petras et al in view of Krassowski … Petras discloses halogen containing flame retardant pressure sensitive adhesive tapes can be used to cover certain magnet wire wound components of electrical or electronic equipment. … The reference further discloses othe [sic] additives … such as antimony oxide.

On January 25, 2002, Molnar filed an Amendment and Response in which he distinguished the Petras Prior Art on the sole basis that it does not disclose the graphite component of the flame-retardant composition.

y.    In view of the fact that another examiner had rejected claims in a related application based on the Petras Prior Art, Petras was clearly material information to the prosecution of the Cameron Applications that should have been disclosed to the PTO. Petras was not cumulative to any other information before the Examiner, and it discloses EMI shielding material with flame retardance imparted by a coating that includes halogenated and metal oxides

flame retardant additives as claimed in at least some of the pending and issued claims of the Cameron Applications..

z.      The Petras Prior Art was never disclosed in the Cameron Applications.

aa.      Despite the materiality of the Truong Application, the Test Results, and the Petras Prior Art, Applicants did not disclose this material information. Upon information and belief, Applicants failures to disclose the Truong Application, the Test Results, and the Petras Prior Art, were done with deceptive intent, or, at least, with such gross negligence as to be equivalent to deceptive intent.

bb.      Each of the Parker Patents is unenforceable in view of the conduct set forth above. Each of the breaches of the Applicants' duty of good faith and candor, individually and collectively, constitute a basis for rendering unenforceable each of the Parker Patents, and the totality of Applicants' conduct demonstrates inequitable conduct. Each Parker Patent after the first is further unenforceable in view of the infectious unenforceability of the inequitable conduct during the course of the prosecution of the Cameron Applications.

## RESERVATION OF RIGHTS

18.19.  ZTJ is still investigating this matter and has not yet had an opportunity to conduct any discovery, and therefore reserves the right to raise such additional defenses as may be appropriate upon further investigation and discovery.

**WHEREFORE,** ZTJ prays as follows:

A.      That Parker and PIL take nothing by reason of their First Amended Complaint, and that judgment be entered for ZTJ;

B.      That the '523 patent, the '348 patent, the '536 patent and the '095 patent, and each and every claim thereof be adjudged to be invalid, and that ZTJ be adjudged not to infringe such patent;

13

C.      That the Court declare this an exceptional case and award ZTJ its attorneys' fees

and costs pursuant to 35 U.S.C. § 285; and

D.      That the Court grant such other and further relief as is just and proper.

Dated: ~~January 28, 2008~~ August 18, 2008      FISH & RICHARDSON P.C.

By:  */s/ William J. Marsden, Jr.* _____
         William J. Marsden, Jr. (#2247)
         919 N. Market Street, Suite 1100
         P.O. Box 1114
         Wilmington, DE 19899-1114
         (302) 652-5070
         marsden@fr.com


         *Attorneys for Defendant*
         *ZIPPERTUBING (JAPAN), LTD.*

Of Counsel:

     John B. Pegram
     John D. Garretson
     David Loretto
     Michael Zoppo
     FISH & RICHARDSON P.C.
     Citigroup Center – 52nd Floor
     153 East 53rd Street
     New York, NY 10022-4611
     (212) 765-5070
     mailto:marsden@fr.com

## CERTIFICATE OF SERVICE

I hereby certify that on ~~January 28~~August 18, 2008, I electronically filed with the Clerk

of Court this AMENDED ANSWER TO FIRST AMENDED COMPLAINT OF

DEFENDANT ZIPPERTUBING (JAPAN), LTD. using CM/ECF which will send electronic

notification of such filing(s) to the following Delaware counsel.  In addition, the document was

caused to be served on the attorneys of record, at the following addresses and in the manner

indicated::

**VIA EMAIL**

Rudolf E. Hutz, Esquire
Francis DiGiovanni, Esquire
Steven A. Nash, Esquire (pro hac vice)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
rhutz@cblh.com
fdigiovanni@cblh.com
snash@cblh.com

*Attorneys for Plaintiffs*
*PARKER-HANNIFIN CORPORATION*
*and PARKER INTANGIBLES, LLC*


_/s/ William J. Marsden, Jr._
William J. Marsden (#2247)


Amended answer 8-18.doc~~80055094.doc~~