# FISH & RICHARDSON P.C.

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

**VIA ELECTRONIC FILING**

August 26, 2008

The Honorable Mary Pat Thynge
United States District Court
United States Magistrate Judge
844 King Street
Wilmington, DE 19801

Re:     Parker-Hannifin Corp. v. Zippertubing (Japan), Ltd.
        USDC-D. Del., C.A. No. 06-751 ***



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Judge Thynge:

I write on behalf of Defendant, Zippertubing (Japan), Ltd. ("ZTJ") to object under F.R.Civ.P. 26(b) and 30(d) to the notices of depositions to be taken by Plaintiff, Parker-Hannifin Corp. ("PH") at the U.S. Consulate in Osaka, Japan and to object to PH's request for an order permitting those depositions. (D.I. 60). ZTJ requests a F.R.Civ.P. 26(c) protective order limiting the scope of examination regarding the issues of infringement and damages to acts by ZTJ and its agents in the United States, and limiting the duration of each deposition to seven hours. A proposed Protective Order is attached.

In order to permit PH to confirm its reservation of a deposition room at the Osaka consulate, and to expedite issuance of the necessary deposition visas for attorneys, ZTJ consents to the issuance of a modified version of the Order proffered for signature by Parker on August 21, 2008, with the name "Loi" corrected to "Ioi," the title of "Ms. Haruka Saito" changed to "Mr." and the words "who will appear voluntarily" are changed to "if they appear voluntarily, subject to any further Protective Order of this Court."

### Procedure for Depositions in Japan

Japan does not have provisions for discovery depositions in its legal system. Depositions for U.S. litigation are not permitted except in a U.S. consulate, pursuant to Article 17(1) of the Consular Convention and Protocol signed at Tokyo March 22, 1963; T.I.A.S. No. 5602, 15 U.S.T. 768, 1964 WL 70427 (U.S. Treaty), which provides in pertinent part: "A consular officer may within his consular district: … (ii) take depositions, on behalf of the courts or other judicial tribunals or authorities of the sending state, voluntarily given…." In this case, with respect, Zippertubing and the noticed deponents will not appear voluntarily at the Osaka consulate for depositions in this case unless the scope of depositions is limited as requested herein.

### Background

The Amended Complaint in this action charges ZTJ with direct infringement, actively inducing infringement and contributory infringement of the four (now three) patents-in-suit, in violation of 35 U.S.C. § 271(a)-(c). (D.I. 22.)  The claimed subject is fire retardant gaskets used in electronic equipment to block electromagnetic interference ("EMI"). ZTJ has answered the Amended Complaint, raising various defenses including lack of accused activity in the United States.  ZTJ has not filed any counterclaims. (D.I. 26.)

FISH & RICHARDSON P.C.

The Honorable Mary Pat Thynge
August 26, 2008
Page 2

The alleged point of novelty of the patents-in-suit relates to the fire retardant coating on the gasket fabric. ZTJ makes and sells the accused gaskets in Japan, where it purchases almost all of the coated fabric used in the accused gaskets from Seiren Co., Ltd., which is a defendant in a copending action filed by PH in this court, C.A. No. 07-104-MPT. ZTJ does not make, sell, offer for sale or export the accused gaskets to the United States. ZTJ has no facilities in the United States and is not registered to do business here.

ZTJ's objects because it appears from the list of topics in PH's Rule 30(b)(6) deposition notice (Exhibit A), and from PH's choice of individual deponents, that PH's principal object is a fishing expedition regarding acts by ZTJ and others in Japan, outside the territorial limits of the U.S. patent law. ZTJ has made it clear since the beginning of this case that it makes and sells the accused products in Japan, and it does not participate in the U.S. market, and therefore, has not violated the U.S. patent laws. ZTJ reiterated this on February 14, 2008, in its Responses and Objections to PH's First Sets of Requests for Documents (1-105) and Interrogatories (1-16). (Exhibit B – General Objections.)

PH has not identified any acts of ZTJ in violation of Sections 271(a)-(c). When ZTJ asked PH to explain the Rule 11 basis for its Complaint, PH did not refer to any activities in the U.S. (*See* Zippertubing's April 21, 2008 letter to PH (Exhibit C), and PH's Responses to Zippertubing's First Set of Interrogatories (1-5) (Exhibit D).) PH apparently agrees that 35 U.S.C. § 271(a) & (c) expressly require that acts of direct infringement and contributory infringement take place "in the United States." Section 271(b) does not include the words, "in the United States." However, as we will show: (1) actively inducing infringement in violation of that section requires more than making and selling accused products outside the United States, with knowledge of the patents, and (2) violation of section 271(b) must be based on acts in the United States of the party charged, because there is no evidence of Congressional intent that section 271(b) have extraterritorial scope.

**The Law of Inducement**

Section 271(b) is violated when someone "actively induces infringement" by another party. The Federal Circuit has recently clarified this law, saying, "The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (*en banc* section) (quoting *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 554 (Fed. Cir. 1990)).

To prove inducement to infringe, it does not suffice for PH to show only that ZTJ made and sold the accused gaskets, knowing that some would be resold in the United States. That does not show inducement. *DSU* held that "inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU*, 471 F.3d at 1306. *DSU* confirmed the Federal Circuit's earlier statement in *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003) that the "mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *DSU*, 471 F.3d at 1305 (citing *Warner-Lambert*, 316 F.3d at 1364).

PH has not identified any evidence of such "specific intent and action to induce infringement."

**The Law of Territoriality**

Both the Supreme Court and Federal Circuit have long emphasized that the territoriality principle limits the U.S. patent laws. Neither of those courts have specifically addressed the territorial limits of section 271(b).

FISH & RICHARDSON P.C.

The Honorable Mary Pat Thynge
August 26, 2008
Page 3

The territoriality principle—as applied to patent infringement—was stated in *Dowagiac Manufacturing Co. v. Minnesota Moline Plow Co*., 235 U.S. 641, 35 S.Ct. 221 (1915): "the right conferred by a patent under our law is confined to the United States and its territories, and infringement of this right cannot be predicated on acts wholly done in a foreign country." *Id.* at 650. *See Voda v. Cordis Corp*., 476 F.3d 887, 899-902 (Fed. Cir. 2007); *Pellegrini v. Analog Devices, Inc.,* 375 F.3d 1113, 1118-19 (Fed. Cir. 2004). This limitation is consistent with the general, governing principle, "We assume that Congress legislates against the backdrop of the presumption against extraterritoriality. Therefore, unless there is 'the affirmative intention of the Congress clearly expressed,' … we must presume [legislation] 'is primarily concerned with domestic conditions.'" *EEOC v. Arabian Am. Oil Co*., 499 U.S. 244, 248, 111 S.Ct. 1227 (1991). This policy seeks to avoid conflict with other national laws, and promotes international comity, a choice of law analysis, and separation of powers. *Cf. Voda,* 476 F.3d at 899 n.9. (refusing supplemental jurisdiction over foreign patent issues).

In 1972, the Supreme Court refused to extend the territorial scope of another part of Section 271 without express guidance from Congress. *Deepsouth Packing Co. v. Laitram Corp.,* 406 U.S. 518, 92 S.Ct. 1700 (1972). The Court concluded that the unassembled export of the elements of an invention did not infringe the U.S. patent. *Id.* at 529. While *Deepsouth* could have simply relied upon the phrase "in the United States" in Section 271(a), it emphasized that "[o]ur patent system makes no claim to extraterritorial effect; 'these acts of Congress do not, and were not intended to, operate beyond the limits of the United States ….'" *Id.* at 531 (quoting *Brown v. Duquesne*). *See also* 35 U.S.C. § 154(a)(1), authorizing the grant of exclusive rights by patent in the United States.

As explained in *Pelligrini*, 375 F.3d at 1116, Section 271(f) was enacted to reverse the holding of *Deepsouth*, giving Section 271 a limited extraterritorial effect when components are supplied from the United States that—when assembled—would infringe a U.S. patent if assembled in the United States. Its subpart (1) expressly includes provisions relating to inducement by acts in the United States relating to such combinations outside the United States. But Section 271(b) was not amended when Section 271(f) was enacted.

Recently, the Supreme Court again interpreted Section 271 narrowly, saying—*inter alia*—that "§ 271(f) is an exception to the general rule that our patent law does not apply extraterritorially…." *Microsoft Corp. v. AT & T Corp.*, 127 S.Ct. 1746, 1751 (2007).

Although the Federal Circuit has found in some cases that foreign entities can be liable for actively inducing infringement under Section 271(b), those cases were decided on the basis of the acts in the United States. In *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001), the inducing party, TriTech, had facilities in California and Singapore. *Id.* at 1344, 1351. "The court left to the jury to decide whether TriTech and OPTi had committed acts of infringement in the United States." *Id.* at 1344. In its most recent cases, the Federal Circuit treated the specific issue of extraterritorial application of section 271(a) as undecided in *MEMC Electronic Mat'ls, Inc. v. Mitsubishi Mat'ls Silicon Corp.*, 420 F.3d 1369, 1379 (Fed. Cir. 2005) ("We … need not address whether inducing activity in Japan can give rise to liability under United States patent laws), and *id.* at 1374, 1379-80, and found no basis for extraterritorial application in *Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1360-61 (Fed. Cir. 2004) (holding that exterritorial acts of selling to a separate, unaffiliated company that may import into the United States did not violate an injunction). The few district courts that have given extraterritorial application to Section 271(a) did not address the authority in this letter.

For all of these reasons, ZTJ respectfully requests that the Court enter the attached Protective Order.

FISH & RICHARDSON P.C.

The Honorable Mary Pat Thynge
August 26, 2008
Page 4

Respectfully submitted,

*/s/ William J. Marsden, Jr.*

William J. Marsden, Jr.

WJM:jrm

Attachments

cc:  Opposing counsel (via email)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PARKER-HANNIFIN CORPORATION, and
PARKER INTANGIBLES, LLC

                Plaintiff,

    v.

ZIPPERTUBING (JAPAN), LTD.,

                Defendant.

Civil Action No. 06-751-MPT

## [PROPOSED] PROTECTIVE ORDER

The court having considered the letters and oral argument of the parties with respect to defendant Zippertubing (Japan), Ltd.'s ("ZTJ") request for a protective order limiting the scope of the depositions noticed by plaintiff Parker-Hannifin Corp. to be taken at the U.S. Consulate in Osaka, Japan,

    IT IS HEREBY ORDERED:

    Pursuant to Fed.R.Civ.P. 26(c) the scope of any examination at such depositions regarding the issues of infringement and damages shall be limited to acts by ZTJ and its agents in the United States, and the depositions shall be limited to no more than seven hours each.

**IT IS SO ORDERED**.

Dated: _____

                    _____
                    The Honorable Mary Pat Thynge
                    United States District Court

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PARKER-HANNIFIN CORPORATION, and<br>PARKER INTANGIBLES, LLC,<br><br>       Plaintiffs,<br><br>       v.<br><br>ZIPPERTUBING (JAPAN), LTD.,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)   C.A. No. 1:06-cv-751-MPT<br>)<br>)<br>)<br>) |

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE, that at the American Consulate General Osaka-Kobe, 11-5 Nishitenma 2-chome, Kita-ku, Osaka 530-8543, Japan, counsel for Parker-Hannifin Corporation, and Parker Intangibles, LLC (collectively "Plaintiffs") will take, pursuant to Fed.R.Civ.P. 30(b)(6) and Article 17 of the United States – Japan Consular Convention, the deposition upon oral examination of Zippertubing (Japan), Ltd. ("Zippertubing"). The deposition will commence at 1:00 P.M. on October 1, 2008 or at the conclusion of Mr. Hiraaki Otsuka's deposition, noticed herewith. Zippertubing is requested to designate the person or persons most knowledgeable regarding each of the issues listed on Schedule A attached hereto to appear before a notary public or some other officer authorized by law to administer oaths.

The oral examination will continue from day to day until completed on or before October 8, 2008, weekends, Japanese and U.S. holidays excluded. Please be advised that this deposition may be recorded by videotape in addition to stenographic recording.

Plaintiffs hereby incorporate by reference all definitions and instructions set forth in Plaintiffs' First Set of Requests for Documents and Things (Nos. 1-105) as though

fully set forth herein.

Respectfully submitted,

CONNOLLY BOVE LODGE & HUTZ, LLP

By:    */s/ Steven A. Nash*
     Rudolf E. Hutz (#484)
     Francis DiGiovanni (#3189)
     Steven A. Nash (PA #85707 - admitted *pro hac vice*)
     The Nemours Building
     1007 N. Orange Street
     Wilmington, DE 19899
     Phone:  (302) 658-9141
     rhutz@cblh.com
     fdigiovanni@cblh.com
     snash@cblh.com

Dated:  August 21, 2008    Attorneys for Plaintiffs

SCHEDULE A:  DEPOSITION TOPICS

1.      Zippertubing's business plans, strategic plans, marketing plans, financial plans (*e.g.*, documents reflecting revenue, profits, costs and projections), distribution plans and similar plans, including projections and forecasts, concerning the sale of Zippertubing's Flame Retardant Electromagnetic Interference Shielding Gaskets ("FR EMI Shielding Gaskets"), including those designated "81T" and "65T".

2.      Sales of Zippertubing's FR EMI Shielding Gaskets from December 2000 to present, including the persons or entities that purchased or currently purchase FR EMI Shielding Gaskets (either directly through Zippertubing or through a distributor) and the quantities purchased.

3.      The channels of trade for Zippertubing's FR EMI Shielding Gaskets, including the manner by which the FR EMI Shielding Gaskets have been sold, resold or otherwise distributed to end users (including the ultimate purchasers of equipment containing the FR EMI Shielding Gaskets) since 2000.

4.      The ultimate destination countries for Zippertubing's FR EMI Shielding Gaskets, including the quantities of FR EMI Shielding Gaskets that have been imported into the United States and other countries.

5.      The market for Zippertubing's FR EMI Shielding Gaskets, including competitors of Zippertubing.

6.      Revenues received by Zippertubing since December 2000 in connection with the sale of FR EMI Shielding Gaskets.

7.      Expenses incurred by Zippertubing since December 2000 in connection with the manufacture or sale of FR EMI Shielding Gaskets.

8.    Licenses and license negotiations relating to EMI shielding gaskets and Zippertubing products.

9.    The construction and specifications of Zippertubing's FR EMI Shielding Gaskets.

10.    The identity, supplier, selection of, and specifications for all materials used to make Zippertubing's FR EMI Shielding Gaskets.

11.    Research and development efforts relating to the design of Zippertubing's FR EMI Shielding Gaskets designated "81T".

12.    Research and development efforts relating to the design of Zippertubing's FR EMI Shielding Gaskets designated "65T".

13.    Research and development efforts relating to the design of Zippertubing's FR EMI Shielding Gaskets other than those designated "65T" or "81T".

14.    The flame retardant characteristics of Zippertubing's FR EMI Shielding Gaskets.

15.    The flame retardant characteristics of all materials used to make Zippertubing's FR EMI Shielding Gaskets.

16.    The flame retardant additives (compounds), including the quantity, in any coating or layer applied to a fabric that is used to make Zippertubing's FR EMI Shielding Gaskets.

17.    The flame retardant additives (compounds), including the quantity, in any resilient core that is used to make Zippertubing's FR EMI Shielding Gaskets.

18.    The flame retardant additives (compounds), including the quantity, in any fabric (other than a coating on the fabric) that is used to make Zippertubing's FR EMI Shielding Gaskets.

19.    Testing related to Zippertubing's FR EMI Shielding Gaskets.

20.    All efforts to obtain an Underwriter's Laboratories ("UL") certification of V-0 under UL Standard No. 94 for Zippertubing's FR EMI Shielding Gaskets.

21.    Testing and analysis of products of Zippertubing's competitors in the field of EMI shielding gaskets.

22.    The manufacturing processes used to make Zippertubing's FR EMI Shielding Gaskets.

23.    The patents-in-suit and all related patents, including U.S. Patent No. 6,248,393, U.S. Patent No. 6,521,348, U.S. Patent No. 6,387,523, U.S. Patent No. 6,716,536, and U.S. Patent No. 6,777,095, Zippertubing's knowledge of the patents, and Zippertubing's consideration of the patents in designing or marketing FR EMI Shielding Gaskets.

24.    Any publications, prior sales or importations into the United States that Zippertubing considers prior art to the patents-in-suit.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21ᵗʰ day of August 2008, I caused a true and

correct copy of the foregoing to be served upon counsel for Defendants as follows:

**BY E-MAIL AND HAND DELIVERY**
William J. Marsden, Jr.
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
marsden@fr.com

**BY E-MAIL AND U.S. MAIL**
John P. Pegram
John Garretson
FISH & RICHARDSON P.C.
Citigroup Center
153 East 53ʳᵈ Street, 52ⁿᵈ Floor
New York, NY 10022-4611
pegram@fr.com
zoppo@fr.com

                              */s/ Steven A. Nash*
                              Steven A. Nash

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

PARKER-HANNIFIN CORPORATION, and
PARKER INTANGIBLES, LLC
Plaintiff,

v.                                              Civil Action No. 06-751-(JJF)

ZIPPERTUBING (JAPAN), LTD.,

Defendant,

**ZIPPERTUBING's RESPONSES TO**
**PARKER HANNIFIN'S FIRST SET OF REQUESTS FOR PRODUCTION**
**(Nos. 1 – 105)**

Zippertubing (Japan), Limited ("ZTJ") responds and its attorneys object as follows to Parker Hannifin Corporation's ("PH") Requests for Production, Nos. 1 – 105 as follows.  ZTJ will produce representative, non-privileged, requested documents that are not subject to its objections, if such documents are found in a reasonable search.

**GENERAL OBJECTIONS**

The foregoing General Objections are incorporated in and made a part of each of the following responses.  Each response is made without waiver or prejudice to these General Objections and ZTJ reserves the right to supplement its responses pursuant to continued investigation as developments make it appropriate.

ZTJ further asserts that nothing stated herein should be interpreted as an admission that any specific ZTJ products have been made, used, offered for sale, or sold in the United States or imported into the United States.

1

A.      ZTJ objects to the Requests in their entirety, as well as PH's Instructions and Definitions to the extent that they purport to impose obligations beyond those imposed by the Federal Rules of Civil Procedure (the "Federal Rules") and the Local Rules and Default Standard for Discovery of Electric Documents of the United States District Court for the District of Delaware (collectively the "Local Rules" and, together with the Federal Rules, the "Rules of Civil Procedure"). Any objections or responses to the Requests by ZTJ, including the disclosure of any documents, materials or information, are without prejudice to this objection. In particular, and without limitation, ZTJ objects to and declines to comply with those parts of PH's instructions that purport to require more than in required by those rules and standards.

B.      ZTJ objects to PH's Requests in their entirety because they (1) are directed to subjects outside the scope of the U.S. patent laws, (2) violate Japanese sovereignty, (3) are apparently intended to obtain information for use in other litigation, which information is not discoverable in Japan, (4) are not reasonably calculated to lead to the discovery of admissible evidence in this litigation, and (5) are overbroad, unduly burdensome and oppressive. As shown by its responses to PH's Interrogatories 2 and 12, ZTJ does business only in Japan. It (a) has not made, used, offered to sell or sold any FR EMI Shielding Gasket or FR EMI Shielding Gasket Material in the United States, or imported any such gasket or material into the United States; (b) has not by any act in the United States (or elsewhere) induced the making, using, offering to sell or selling of any such gasket or material in the United States, or importation of any such gasket or material into the United States; and (c) has not offered to sell or sold in the United States, or imported into the United States any component of any such gasket or material which is not a staple article or commodity of commerce suitable for substantial noninfringing use.

C.      ZTJ and its attorneys hereby assert all applicable privileges, protections and immunities.  ZTJ objects to the Requests in their entirety to the extent that they seek the production of documents, things and ESI that were prepared after ZTJ's receipt of PH's December 2, 2005 letter in anticipation of or in connection with litigation, are subject to claims of privilege under the attorney-client privilege, constitute work product by or for attorneys, or are otherwise privileged, protected or immune from discovery for any reason whatsoever.  ZTJ further objects to production of any document, thing or ESI that is a communication within Japan that a party would not be compelled to produce in litigation under Japanese law, including but not limited to communications with or work product of a Japanese attorney at law, or patent attorney, or member of ZTJ's legal or IP staff, and trade and business secrets,  as such compulsion—under the territorial circumstances of this civil action—would be violative of due process and Japanese sovereignty.  For those reasons, ZTJ objects to and declines to comply with PH's instruction entitled "Claims of Privilege and Exception to Discovery."  Any inadvertent disclosure, identification or production of documents or information of the type referenced in this objection shall not waive any privileges, protections or immunities.

D.      ZTJ objects to the Requests in their entirety and the individual Requests as overbroad, unduly burdensome and oppressive, and because the burden or expense of the proposed discovery outweighs their likely benefit, taking into account the factors listed in F.R.Civ.P. 26(b)(2)(C), particularly in light of the facts that ZTJ's documents relate to activities outside the territorial scope of U.S. patent law, or are in the Japanese language, and that—to the extent otherwise discoverable—the information sought is obtainable from some other source that is more convenient, less burdensome, or less expensive.

E.    ZTJ objects to the Requests in their entirety to the extent that they are unreasonably cumulative or duplicative.  In particular and without limitation, ZTJ objects to PH's instruction entitled "Duplicative Documents."

F.    ZTJ objects to the Requests in their entirety to the extent that they call for the disclosure of documents, communications or materials that are, or information that is, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

G.    ZTJ objects to the Requests in their entirety to the extent that they seek documents concerning infringement of  the '393 patent, because the '393 patent is not asserted in this litigation.

H.    ZTJ objects to the Requests in their entirety to the extent that they seek, in the absence of an appropriate confidentiality agreement or protective order, documents, communications, materials or information regarding trade secrets, confidential or proprietary research and development, business, commercial or personal information and other confidential information; and to the extent that they seek disclosure of totally irrelevant information in documents concerning relevant information.  In the absence of a Protective Order acceptable to ZTJ, it will produce those documents its has agreed to produce that are Confidential in accordance with Local Civil Rule 26.2.

I.    ZTJ objects to the Requests in their entirety to the extent that they seek documents or information already in the possession, custody or control of PH, or more easily accessible to PH from other sources.  In particular and without limitation, ZTJ objects to PH's instruction entitled "Possession by Plaintiffs."

4

J.      ZTJ objects to the Requests in their entirety to the extent that they request the production of "all documents, things and ESI" under circumstances in which production of a subset of such items would be sufficient to show the pertinent information.

K.      ZTJ objects to the Requests in their entirety to the extent that they seek the production of documents beyond ZTJ's custody, possession or control.

L.      ZTJ objects to the Requests in their entirety to the extent that they are not relevant to the patent liability claim or defense of any party, and are not reasonably calculated to lead to the discovery of admissible evidence on such claims or defenses, and therefore—if relevant at all—are premature.  Without limiting the generality of the foregoing, ZTJ further objects to the Requests in their entirety as premature to the extent they seek the production of documents concerning one or more of damages issues and issues relating to PH's contention that ZTJ has infringed deliberately and willfully. ZTJ reserves the right to object more fully and on other grounds if and when the premature Requests are renewed.

M.      ZTJ objects to all requests for production of ESI and to PH's instruction entitled "Electronic Data" as overbroad, unduly burdensome and oppressive, and states that the burden or expense of the proposed discovery outweighs their likely benefit, taking into account the factors listed in F.R.Civ.P. 26(b)(2)(C) and Default Standard for Discovery of Electric Documents of this court. ZTJ further identifies its requested ESI materials as being of limited accessibility.  To the extent that requested materials that it has agreed to produce are found in a reasonable search of ESI, ZTJ will produce that material in electronic, PDF format. ZTJ designates John B. Pegram as its E-discovery liaison pursuant to the Default Standard for Discovery of Electronic Documents of this court.

In particular and without limitation, ZTJ objects that conducting searches for ESI in connection with all of PH's 105 Requests for Production (plus subparts) would be unduly burdensome and the requests as directed to ESI are not reasonably calculated to lead to discovery of admissible evidence. Further, ZTJ objects that many of its electronic records are maintained in the Japanese language in approximately 50 laptop computers of individual employees which are of limited accessibility, especially when considered in connection with the excessive number and limited relevance of the requests, as applied to ZTJ, and the general burden of discovery

N.    ZTJ objects to the Requests in their entirety to the extent that they cast interrogatories in the guise of a document request as an improper attempt to circumvent the limits on the number and type of interrogatories.

O.    ZTJ expressly reserves the right to supplement its responses and objections to the Requests.

P.    Notwithstanding ZTJ's objections, ZTJ may produce representative, non-privileged documents within the scope of the Requests concerning one or more patent liability issues in this case. The production by ZTJ of any document, material or information, the request for production of which is objected to herein, shall not constitute waiver of any applicable objection.

## SPECIFIC REQUESTS FOR PRODUCTION
## AND RESPONSES

1.    All documents, things and ESI supporting, refuting, or otherwise relating to the allegation in paragraph 5 of your Answer that the '523 patent was not duly and legally issued.

Response 1.

ZTJ objects to this Request on the grounds stated in its General Objections stated above which may be applicable to this Request. In particular and without limitation, ZTJ objects that

Dated:  February 14, 2008                    FISH & RICHARDSON P.C.


                                              By: _____
                                                  William J. Marsden, Jr. (#2247)
                                                  919 N. Market Street, Suite 1100
                                                  P.O. Box 1114
                                                  Wilmington, DE 19899-1114
                                                  (302) 652-5070
                                                  marsden@fr.com
                                                  *Attorneys for Defendant*
                                                  *ZIPPERTUBING (JAPAN), LTD.*

Of Counsel:

    John B. Pegram
    John D. Garretson
    David Loretto
    Michael Zoppo
    FISH & RICHARDSON P.C.
    Citigroup Center – 52nd Floor
    153 East 53rd Street
    New York, NY 10022-4611
    (212) 765-5070
    mailto:marsden@fr.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2008, Zippertubing's Responses to Parker Hannifin's First Set of Requests For Production (Nos. 1 – 105) were served on the following counsel in the manner indicated:

### VIA EMAIL AND BY HAND

Rudolf E. Hutz, Esquire
Francis DiGiovanni, Esquire
Steven A. Nash, Esquire (pro hac vice)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
rhutz@cblh.com
fdigiovanni@cblh.com
snash@cblh.com

*Attorneys for Plaintiffs*
*PARKER-HANNIFIN CORPORATION*
*and PARKER INTANGIBLES, LLC*

William J. Marsden, Jr. (#2247)

30398324.doc

39

# Exhibit C

# FISH & RICHARDSON P.C.

Citigroup Center
153 East 53rd Street,
52nd Floor
New York, New York
10022-4611

Telephone
212 765-5070

Facsimile
212 258-2291

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

MUNICH

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

VIA EMAIL

April 21, 2008

Steven A. Nash, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building 1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899

Re:    Parker-Hannifin Corporation v. Zippertubing (Japan) Ltd.
       Civil Action No. 06-751-MPT  (D.Del.)

Dear Steve:

We write in response to your letter of April 4, 2008 about the objections by
Zippertubing (Japan) Ltd. ("ZTJ") to discovery requests by Parker-Hannifin
Corporation ("Parker").

The responses ZTJ has provided are appropriate to the case. I regret to say that it is
apparent from Parker's responses to ZTJ's Interrogatory Nos. 1-4, revealing the lack
of basis for its infringement pleadings, that Parker apparently seeks to reach out
through the U.S. court on a fishing expedition for discovery in Japan that it could not
properly obtain through the courts there. Parker has not cited any valid basis for its
boilerplate allegations that ZTJ directly infringed, contributorily infringed, actively
induced infringement and willfully infringed in violation of the U.S. patent laws.
Parker has not cited any evidence of accused infringing activity by ZTJ in the United
States.

For example, we cannot imagine what basis Parker has for asserting that ZTJ has
directly and contributorily infringed in violation of 35 U.S.C. §§ 271(a) & (c),
respectively. Both are literally limited to acts in the United States. Also, in the case of
the contributory infringement allegation, what "component" of a patented invention
does Parker assert ZTJ is selling, offering for sale or importing?

F I S H &  R I C H A R D S O N  P.C.

Steven A. Nash, Esq.
April 21, 2008
Page 2


Parker has not pointed to any evidence of the bad intent that would be necessary to show in support of the allegation that someone contributorily infringed, actively induced infringement or willfully infringed one of its U.S. patents. On the other hand, ZTJ has provided substantial evidence in support of its good faith belief that the patents asserted against it are invalid, based on patent defects, prior art references, and the fact that it is accused of infringing with products that it listed with the UL and believes were sold in the United States before Parker's priority date.

Your letter continues the discussion of the territorial limitations of U.S. patent laws that we began with Parker's attorneys several months ago.

The legitimacy of discovery from foreign defendants is based on the principle that, having chosen to do business in the United States, they should be subject to our laws with respect to that business. In this case, the corollary should be applied—ZTJ having chosen not to conduct a flame retardant gasket business in the United States, it should not be subjected to U.S. patent laws and discovery procedures as to what it did in Japan.

Contrary to Parker's position, as expressed in your letter, U.S. laws generally, and the patent laws in particular, have been interpreted by the Supreme Court as being limited to the territorial limits of the United States unless there is a clear intent of Congress to extend them in some particular way. When—as referenced in your letter—the *en banc* Federal Circuit said in the *DSU* case, "Accordingly, the district court correctly instructed the jury in this case," it was referring to the part of the instruction concerning intent. We find nothing in *DSU* to indicate that the issue of territorial scope of section 271(b) was before the court or decided by the court.

35 U.S.C. § 271(a) & (c) are expressly limited to direct and contributory acts of infringement within the United States. Although section 271(b) is territorially silent, it is limited by the general principle that  U.S. legal rights are territorial unless Congress has indicated otherwise.  *See, e.g.*, *Small v. U.S.*, 544 U.S. 385, 125 S.Ct. 1752 (2005). In an analogous situation to that posed by Section 271(b), the Court pointed out many years ago, in *United States v. Palmer*, 3 Wheat. (16 U.S.) 610, 631, 4 L.Ed. 471 (1818), "The words 'any person or persons,' are broad enough to comprehend every human being" but are "limited to cases within the jurisdiction of the state." The territorial limitation principle has been specifically applied to the

FISH & RICHARDSON P.C.

Steven A. Nash, Esq.
April 21, 2008
Page 3

patent laws. *See, e.g., Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.*, 235 U.S. 641, 650, 35 S.Ct. 221 (1915); *Brown v. Duchesne*, 60 U.S. 183, 195 (1856); *Zoltek Corp. v. U.S.*, 442 F.3d 1345, 1364 (Fed. Cir. 2006); *Enka B. V. of Arnhem, Holland v. E. I. Du Pont De Nemours & Co.*, 519 F.Supp. 356, 362 (D.Del. 1981). We have found no evidence of Congressional intent that Section 271(b) be applicable outside the United States.

The Federal Circuit's Section 271(b) decisions involving foreign entities have been based on acts in the United States. For example, in *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed. Cir. 2005), that court found it unnecessary to address "whether inducing activity in Japan can give rise to liability under United States patent laws," because the issue had not been properly preserved, and remanded for a determination whether there were acts in the United States sufficient to show active inducement here. 420 F.3d at 1383. *Int'l Rectifier Corp. v. Samsung Elec. Co. Ltd.* 361 F.3d 1355, 1360-61 (Fed. Cir. 2004) stated that the Patent Act does not apply to actions outside the United States and reversed a contempt order because the alleged infringing acts were not in the United States. Knowledge that the infringing products were to be imported into the United States was not enough to create liability. 361 F.3d at 1360-62.

As you will see from the cases cited above, the Supreme Court and the Federal Circuit have shown particular attention to policy issues in situations involving territoriality of patent laws, including the principles of comity and avoiding unreasonable interference with the authority of other sovereigns. *See also Voda v. Cordis Corp.*, 476 F.3d 887, 900-902 (Fed. Cir. 2007); *Zoltek Corp. v. U.S.*, 442 F.3d 1345, 1364 (Fed. Cir. 2006). As the Supreme Court recently said in another situation where U.S. patent law did not reach foreign activity, "If [the patentee] desires to prevent copying in foreign countries, its remedy today lies in obtaining and enforcing foreign patents." *Microsoft Corp. v. AT & T Corp.*, ___ U.S. ___ , 127 S.Ct. 1746, 1758 (2007).

ZTJ also objects to Parker's continuing to broadly assert patents against ZTJ with knowledge of prior art activities in the United States, including ZTJ's UL listings and gaskets in Fujitsu computers, and Schlegel's gasket sales.

Fɪsʜ & Rɪᴄʜᴀʀᴅsᴏɴ ᴘ.ᴄ.

Steven A. Nash, Esq.
April 21, 2008
Page 4

ZTJ's other objections to Parker's discovery requests should be considered in the context of the matters discussed above.

Federal Rules of Civil Procedure 26(b) & (c) permit the court to limit the scope of discovery as is appropriate to the case. In particular, Rule 26(b)(2)(C)(iii) requires the court to limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues." We believe that Judge Thynge will recognize the bases for strictly limiting discovery by Parker in this case, if a motion becomes necessary.

Finally, the pressure of the impending end of fact discovery, mentioned at the end of your letter, is likely to be alleviated by extension of the discovery period, if the court accepts our joint proposal.

Please feel free to call and discuss these subjects.


Very truly yours,

s/ John B. Pegram

John B. Pegram

30413076.doc

# Exhibit D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PARKER-HANNIFIN CORPORATION, and | ) | |
| PARKER INTANGIBLES, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:06-cv-00751 |
| | ) | |
| ZIPPERTUBING (JAPAN), LTD., | ) | |
| | ) | |
| | ) | |
| Defendant, | ) | |

**PLAINTIFF'S ANSWERS AND OBJECTIONS TO DEFENDANT'S**
**FIRST SET OF INTERROGATORIES (Nos. 1-5)**

In accordance with Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff

Parker-Hannifin Corporation ("Parker" or "Plaintiff") hereby responds to the Defendant's First

Set of Interrogatories (Nos. 1-5) propounded by Zippertubing (JAPAN), Ltd. ("Zippertubing",

"ZTJ" or "Defendant").

**GENERAL OBJECTIONS**

Parker incorporates herein, and in each and every response below, the General Objections

set forth in its Answers and Objections to Defendant's First Set of Production Requests to

Plaintiff (Nos. 1-19).

**INTERROGATORIES**

**Interrogatory No. 1**:

State, with respect to each of the patents in suit, the full basis for the allegation in
paragraph 9 of the Complaint that ZTJ's activities include direct infringement; identifying each
product alleged to be made, used, offered for sale or sold in the United States by ZTJ, and each
product alleged to be imported into the United States by ZTJ.

**Response to Interrogatory No. 1**:

Plaintiff objects to this Interrogatory on the grounds that it is premature.  Plaintiff also objects because the Interrogatory calls for information requiring an underlying legal conclusion.  Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or work product doctrine.  Subject to and without waiving these objections, Plaintiff responds as follows.  Based on the information presently available to it, Plaintiff believes that at least the products having the product number or designations 81T and 65T infringe the following patents-in-suit: U.S. Pat. No. 6,521,348 ("the '348 patent"), U.S. Pat. No. 6,716,536 ("the '536 patent"), and U.S. Pat. No. 6,777,095 ("the '095 patent").  Plaintiff believes that each of the 81T and 65T gaskets has been imported into the United States.  Plaintiff is continuing to investigate whether the gaskets were imported into or sold in the United States by ZTJ, its agents or affiliates, or its customers.  Discovery is continuing and Plaintiff is investigating the claims and defenses.  Plaintiff will supplement its answer to this Interrogatory pursuant to the requirements of Fed. R. Civ. P. 26(e).

**Interrogatory No. 2**:

State, with respect to each of the patents in suit, the full basis for the allegation in paragraph 9 of the Complaint that ZTJ's activities include contributory infringement; identifying each component alleged to be offered for sale or sold in the United States by ZTJ, and each component alleged to be imported into the United States by ZTJ.

**Response to Interrogatory No. 2**:

Plaintiff objects to this Interrogatory on the grounds that it is premature.  Plaintiff also objects because the Interrogatory calls for information requiring an underlying legal conclusion.  Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or work product doctrine.  Subject to and without waiving these

objections, Plaintiff responds as follows.  Based on ZTJ's responses to Plaintiff's Interrogatories,

Plaintiff is withdrawing its claim of contributory infringement without prejudice to reinstating

the claim if further discovery reveals evidence of such infringement.

**Interrogatory No. 3**:

State, with respect to each of the patents in suit, the factual basis for the allegation in paragraph 9 of the Complaint that ZTJ's activities include active inducement of infringement of each of the patents in suit; identifying each act of direct infringement in the United States by a third party alleged to have been induced by ZTJ, each act of inducement in the United States alleged to have been done by ZTJ with respect to that alleged direct infringement, and the factual basis for such acts by ZTJ constituted "active inducement" in violation of 35 U.S.C. § 271(b).

**Response to Interrogatory No. 3**:

Plaintiff objects to this Interrogatory on the grounds that it is premature.  Plaintiff also

objects because the Interrogatory calls for information requiring an underlying legal conclusion.

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the

attorney-client privilege and/or work product doctrine.  Subject to and without waiving these

objections, Plaintiff responds as follows.  ZTJ has been aware of the patents-in-suit since at least

December 10, 2005.  Since that time ZTJ has continued to market and sell flame retardant EMI

shielding gaskets that fall within the scope of at least one claim of each of the '348 patent, '536

patent, and '095 patent.  ZTJ was at all relevant times aware that its gaskets were being imported

into and/or sold and used in the United States by its customers, and is aware that these activities

continue today.  ZTJ receives substantial revenue from the sale of its infringing gaskets, and

fully intended at all relevant time for the gaskets to be imported, sold, and used in the United

States in infringement of the patents.  In marketing and selling its infringing gaskets, ZTJ

possessed, and continues to possess, specific intent to encourage infringement by numerous

entities, including Sony Corp., Panasonic Corp., and Sharp Electronics Corp., who import and

sell in the United States products containing ZTJ gaskets.  ZTJ was at all relevant times aware that its encouragement of this infringement did in fact lead to actual acts of direct infringement, and continues to be aware of this today.

**Interrogatory No. 4**:

State, with respect to each of the patents in suit, the factual basis for the allegation in paragraph 10 of the Complaint that ZTJ's activities include willful, deliberate and intentional infringement.

> **Response to Interrogatory No. 4**:
>
> Plaintiff objects to this Interrogatory as premature.  Plaintiff also objects because the Interrogatory calls for information requiring an underlying legal conclusion, improperly seeks expert testimony and responding to the Interrogatory as written would be overly burdensome. Plaintiff objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine.  Subject to and without waiving their objections, Plaintiff responds as follows.  Plaintiff incorporates its response to Interrogatory No. 3.  Further, discovery in this case has just begun and determination with respect to willful infringement depends in part upon information presently in the possession of Defendant and/or other parties. Plaintiff expects that experts will analyze such information when provided.  Defendant has been aware of the patents-in-suit since at least December 2005, but has willfully continued to infringe same.  Discovery is continuing and Plaintiff is investigating the claims and defenses.  Plaintiff will supplement its answer to this Interrogatory pursuant to the requirements of Fed. R. Civ. P. 26(e).

**Interrogatory No. 5**:

State, with respect to each of the patents in suit, the factual basis for the allegation in paragraph 10 of the Complaint that PH will be irreparably harmed unless ZTJ's alleged

infringing activities are enjoined.

**Response to Interrogatory No. 5**:

Plaintiff objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine. Subject to and without waiving this objection, Plaintiff responds as follows. ZTJ's sale of infringing gaskets, which are imported into the United States, deprives Plaintiff of sales of its own gasket products, such as Soft Shield 5000. If ZTJ is not enjoined from such activity, Plaintiff will continue to lose sales to ZTJ. The amount of future sales lost to ZTJ is presently incalculable. Plaintiff cannot obtain adequate money damages for these future losses absent a string of recurrent law suits against ZTJ for its continued infringement, which would not be practical. Thus, the harm that Plaintiff will suffer in the form of lost sales absent an injunction is irreparable.

CONNOLLY BOVE LODGE & HUTZ LLP

By: /s/ Steven A. Nash
     Rudolf E. Hutz (#484)
     Frank DiGiovanni (#3189)
     Steven A. Nash (PA #85707, admitted *pro hac vice*)
     The Nemours Building
     1007 North Orange Street
     Wilmington, Delaware 19801
     Phone (302) 658-9141
     rhutz@cblh.com
     fdigiovanni@cblh.com

Dated: March 4, 2008         *Attorneys for Plaintiff*

594638v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 4, 2008, I caused a copy of the foregoing document to be served upon the following in the manner indicated:

| <u>VIA E-MAIL AND HAND DELIVERY</u> | <u>VIA E-MAIL AND U.S. MAIL</u> |
|---|---|
| William J. Marsden, Jr.<br>FISH & RICHARDSON P.C.<br>919 N. Market Street, Suite 1100<br>P.O. Box 1114<br>Wilmington, DE 19899-1114<br>marsden@fr.com | John P. Pegram<br>Michael T. Zoppo<br>FISH & RICHARDSON P.C.<br>Citigroup Center<br>153 East 53rd Street, 52nd Floor<br>New York, NY 10022-4611<br>pegram@fr.com<br>zoppo@fr.com |

/s/ Steven A. Nash
Steven A. Nash (PA #85707 admitted *pro hac vice*)