# FISH & RICHARDSON P.C.

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

FR

ATLANTA
AUSTIN
BOSTON
DALLAS
DELAWARE
NEW YORK
SAN DIEGO
SILICON VALLEY
TWIN CITIES
WASHINGTON, DC

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

**VIA ELECTRONIC FILING**

August 27, 2008

The Honorable Mary Pat Thynge
United States District Court
United States Magistrate Judge
844 King Street
Wilmington, DE 19801

  Re: Parker-Hannifin Corp. v. Zippertubing (Japan), Ltd.
     USDC-D. Del., C.A. No. 06-751 ***

Dear Judge Thynge:

I write on behalf of Zippertubing (Japan), Ltd. ("ZTJ") in response to Mr. DiGiovanni's August 26, 2008 letter on behalf of Parker-Hannifin Corp. ("PH")(D.I. 62), raising discovery issues for discussion at the discovery teleconference scheduled at 4:00 p.m. August 28, 2008.

In particular, PH's letter challenges the adequacy of ZTJ's responses to PH's Interrogatories 1- 16 and Requests for Production 1-105. PH's letter, however, did not submit copies of those discovery requests or responses (see Local Civil Rule 37.1), and did not particularize PH's complaints about the individual responses. ZTJ's general objections to PH's Request for Production were submitted by ZTJ as Exhibit B with my letter yesterday (D.I. 63.), objecting to PH's proposed depositions in Osaka, Japan. PH's Interrogatories are submitted herewith as Exhibit E.

PH's allegations of "improper conduct" by ZTJ are unfounded and there is no reason why PH could not have raised its complaints about ZTJ's responses months ago. PH's request should be denied in all respects.

Background

ZTJ has objected since the beginning of this case that its accused acts are beyond the territorial scope of the U.S. Patent Law because it does business only in Japan. Therefore, the discovery sought concerning acts in Japan is not reasonably calculated to lead to the discovery of admissible evidence. (F.R.Civ.P. 26(b)). To date, PH has not identified any acts of alleged infringement by ZTJ in the United States. (See PH's response to ZTJ's Interrogatories 1-3; D.I. 63 at Exhibit D).

Contrary to PH's August 26th letter, ZTJ's objections to PH's discovery requests were not first apparent in the past few days. PH's letter overlooked most of ZTJ's past objections and communications on this subject. ZTJ's position regarding the limited territorial scope of U.S. Patent Law and communications on this subject. ZTJ's position regarding the limited territorial scope of U.S. Patent Law was communicated by telephone to PH's attorneys prior to the August 27, 2007, initial scheduling conference. ZTJ suggested a

FISH & RICHARDSON P.C.

The Honorable Mary Pat Thynge
August 27, 2008
Page 2

meeting to discuss the issues in the case in August 2007, before that conference; however, it was not convenient for PH's attorneys. (See Exhibit F, submitted herewith).

ZTJ laid out its objections in its February 2008 responses to PH's Interrogatories 1- 16 and Requests for Production 1-105. (See especially General Objections B and D). The territorial limitation and burdensomeness objections were further explained in Mr. Pegram's April 21, 2008 letter to Mr. Nash. (D.I. 63 at Exhibit C).

Notwithstanding its objections, ZTJ has produced thousands of pages of documents and sample gaskets for testing. As a result of the exchange of information to date, PH has withdrawn its assertion of one patent and appears to no longer assert infringement in connection with ZTJ's type "71" gaskets, which we understand comprise the majority of flame retardant EMI gaskets sold by ZTJ.

**Territorial Limitation of the U.S. Patent Laws**

Contrary to the suggestion in PH's letter, ZTJ does not contend that this Court lacks the power to impose any discovery on ZTJ and ZTJ does not object to legitimate discovery, reasonably calculated to lead to the discovery of admissible evidence. Rather, as outlined in my letter yesterday and our April 21, 2008 letter to PH's attorneys (*Id.*), ZTJ contends that it cannot be liable under 35 U.S.C. § 271(a)-(c) for acts of alleged infringement outside the United States, and that discovery directed to persons and records in Japan regarding such acts is not only irrelevant, but also an invasion of Japanese sovereignty.

**ZTJ's Burdensomeness Objections**

ZTJ also has objected for other reasons to PH's Interrogatories and Requests to Produce as overbroad, unduly burdensome and oppressive, and because the burden or expense of the proposed discovery outweighs its likely benefit. Those objections are set forth in detail in ZTJ's General Objections (see especially General Objections D-G and I-M), and have not been addressed in any detail in PH's August 26th letter. Without waiver of any of ZTJ's objections, we will point out the principal reasons why PH's requests should be denied.

The overall burdensomeness of PH's Interrogatories and Requests for Production is indicated by the fact there are more than 25 interrogatory subparts, contrary to F.R.Civ.P. 33(a)(1) and Local Civil Rule 26.1(a), and 105 requests for production, almost all of which request <u>all</u> documents, things and Electronically Stored Information ("ESI") in a category. ZTJ's attorneys have offered to meet and focus the discovery, as early as shortly before the initial scheduling conference in August 2007 (see Exhibit F) and as recently as the meet-and-confer teleconference on Monday, August 25, 2008; however, PH's attorneys have not accepted that proposal.

We request that the Court limit the scope of discovery as is appropriate to the case, in accordance with F.R.Civ.P. 26(b) & (c). In particular, Rule 26(b)(2)(C)(iii) requires the court to limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues." There are simpler, better ways for PH to obtain legitimate discovery.

Fᴉsʜ & Rɪᴄʜᴀʀᴅsᴏɴ ᴘ.ᴄ.

The Honorable Mary Pat Thynge
August 27, 2008
Page 3

For example, during the meet-and-confer teleconference with Mr. Nash on Monday, August 25, 2008, Mr. Pegram pointed out that the key technical issues in dispute have to do with the coating on the fabric from which the accused gaskets are made; however, ZTJ purchases that fabric—almost entirely from Seiren—and ZTJ has little detailed information about the coatings. We understand, however, that Seiren has made a very extensive document production under the Protective Order. Therefore, we question the need for discovery of ZTJ on these topics, other than to identify which fabrics are used. Mr. Pegram offered that, if the identity of fabrics used to make ZTJ's "65T" and "81T" gaskets has not already been provided, it will be upon request.

As another example, PH's August 26th letter requests an order compelling production of ESI, without addressing ZTJ's objection to the burdensomeness of searching for ESI in Japanese in response to 105 requests, including the searching of approximately 50 laptop computers. ZTJ's February 2008 responses to PH's Interrogatories and Requests for Production each included General Objection M, which made a proper objection to such discovery. PH has offered no reason why that objection should not stand.

**PH's Requests Should Be Denied**

Turning to the specific, bullet-point requests in PH's letter:

1. The Court should not compel responses to PH's Interrogatories and Requests for Production, because they exceed the reasonable needs of this case, the burden and expense outweigh the likely benefits, and the number of PH's Interrogatories exceed the limits in the rules.

2. The Court should not compel production of documents or supplementation of responses to Interrogatories relating to alleged acts of infringement outside the United States and alleged damages, because PH has failed to show that acts outside the United States can violate 35 U.S.C. § 271(a)-(c) and, therefore, the discovery sought is not reasonably calculated to lead to the discovery of admissible evidence.

3. The Court should not compel searching and production of ESI, because PH's discovery requests exceed the reasonable needs of this case, and the burden and expense outweigh the likely benefits.

4. The Court should not compel attendance of ZTJ employees for deposition in the United States or compel ZTJ to produce a 30(b)(6) witness in the United States, because ZTJ has not filed a claim or counterclaim in this case, and because ZTJ has not shown any legitimate basis for its request.

5. No extensions of time should be granted, because ZTJ gave notice of its objections in its responses to PH's Interrogatories and Production Requests, more than six months ago.

In summary, for the reasons stated in this letter, my letter yesterday and all of the referenced Exhibits and cited cases, PH's requests should be denied.

Respectfully submitted,

*/s/ William J. Marsden, Jr.*

William J. Marsden, Jr.

WJM:jrm
cc: Opposing counsel (via email)

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PARKER HANNIFIN CORPORATION,   )<br>                                                        )<br>                                                        )<br>                          Plaintiff,         )<br>                                                        )<br>          v.                                            )<br>                                                        )<br>ZIPPERTUBING (JAPAN) LTD.,      )<br>                                                        )<br>                                                        )<br>                          Defendant.    )  | Civil Action No. 06-cv-00751-*** |

**PLAINTIFF'S FIRST SET OF INTERROGATORIES (NOS. 1-16)**

Plaintiff Parker Hannifin Corporation ("Parker"), through counsel, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, propound interrogatories upon Defendant Zippertubing (Japan) Ltd. ("Zippertubing").

**DEFINITIONS**

The Definitions set forth in Plaintiffs' First Set of Requests for Production of Documents and Things apply to these Interrogatories and are incorporated by reference as if fully set forth herein.

**INSTRUCTIONS**

The Instructions set forth in Plaintiff's First Set of Requests for Production of Documents and Things apply to these Interrogatories and are incorporated by reference as if fully set forth herein. In addition, the following instructions apply:

**Federal Rule 33(d).** If Defendant elects to avail itself of the procedure authorized by Fed. R. Civ. P. 33(d), Defendants shall classify or otherwise appropriately arrange and correlate their documents according to the specific Interrogatory to which each such document is responsive and make specific reference to the documents.

**Partial Responses.** If the Interrogatory cannot be answered in full after exercising due diligence to secure the full information to do so, so state, and answer to the extent possible, specifying your inability to answer the remainder, stating what information or knowledge you have concerning the unanswered portion and detailing what you did in an attempt to secure the unknown information.

**Persons on Whose Behalf Responses Shall Be Made.** Defendant shall respond on behalf of itself and those persons (including but not limited to attorneys, agents, affiliates, parents, subsidiaries, servants, representatives, employees, officers and directors) having information that is (a) responsive to these Interrogatories, and (b) within the possession, custody or control of Defendant.

**Responses in Writing and Under Oath.** The responses to these Interrogatories shall be made in writing and under oath pursuant to Fed. R. Civ. P. 26 and 33.

**Subparagraphs.** Whenever information requested in an Interrogatory is itemized in subparagraphs, Defendant shall answer each such subparagraph separately.

The Interrogatories are as follows:

## INTERROGATORIES

1. Identify the date on which any person employed or retained by you first learned or became aware of the patents-in-suit and state the circumstances under which such person or persons first learned or became aware of the patents-in-suit. Include within your answer the name or names of the person or persons who gained such knowledge, and the addresses of such persons.

2. Describe in detail each fact supporting your allegation that Zippertubing has not engaged in infringing activities related to the patents-in-suit, including direct

infringement, contributory infringement, and/or active inducement of infringement within the meaning of 35 U.S.C. §§ 271(a) though (c). For each limitation of each claim of the patents-in-suit that you contend is not met by Zippertubing's activities and products, include within your answer a detailed explanation of how Zippertubing's activities and products do not meet that limitation.

3. Describe in detail each fact supporting any defense that Zippertubing's infringement of the patents-in-suit has not been willful, deliberate, and intentional.

4. Describe in detail each fact supporting your affirmative defense that the patents-in-suit are invalid because "they fail to satisfy one or more of the conditions for patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112". As part of your answer identify and describe in detail any instances prior to February 16, 1999 in which any claimed invention was known, used or on sale in the United States, or patented or described in a printed publication.

5. Describe in detail each fact supporting your affirmative defense that the patents-in-suit are "invalid as a result of obviousness-type double patenting." As part of your answer identify and describe in detail any prior art that renders obvious the differences between the claims of the patents-in-suit.

6. Describe in detail each fact supporting your affirmative defense that "Parker is estopped by virtue of amendments and statements made during the course of prosecution" of the patents-in-suit "from obtaining any construction of the claims of the patents that could cover any of ZTJ's products and the methods by which those products are made."

3

7.	Describe in detail each fact supporting your affirmative defense that "Parker and Parker Intangibles LLC have failed to comply with the provisions of 35 U.S.C. § 287(a)".

8.	Identify each Flame Retardant EMI Shielding Gasket that is (or has been) manufactured, marketed, imported, distributed, sold, or offered for sale by or on behalf of Zippertubing, by the respective product number, trade name, and all other designations used by Zippertubing to identify each product, including the beginning and end dates during which each such product was manufactured, marketed, imported, distributed, sold, or offered for sale, and identify all documents relating to each such product and the persons most knowledgeable about each such product.

9.	Identify all of your customers who have purchased Flame Retardant EMI Shielding Gaskets from you since 2001, and indicate whether or not each customer has sold, offered to sell or used the Flame Retardant EMI Shielding Gaskets (or an apparatus containing same) in the United States or imported the Flame Retardant EMI Shielding Gaskets (or apparatus containing same) into the United States.

10.	Describe in detail the methods that you employ to manufacture Flame Retardant EMI Shielding Gaskets, identifying all documents relating to such methods of manufacturing.  The methods described should include those employed since June 19, 2001 and those employed to produce any Flame Retardant EMI Shielding Gaskets or Flame Retardant EMI Shielding Gasket Material that you contend is prior art to the patents-in-suit.

11.	For each Flame Retardant EMI Shielding Gasket you make or have made, identify the materials used to make it, including the supplier and the part or product

4

designation for each of the resilient core member, the electrically conductive fabric member, and the flame retardant layer (if different from the fabric when acquired by you).

12.   Describe the channels of trade from 2001 to present for each Flame Retardant EMI Shielding Gasket produced, provided or sold by you.  Include in your answer: the identity and location of your direct customers, the identity and location of the end users of the Flame Retardant EMI Shielding Gasket, whether in the form provided by you or after it has been incorporated into another product or apparatus, and the identity and location of any intermediates in the course of trade between your direct customers and the end users; the quantity of each Flame Retardant EMI Shielding Gasket that is ultimately used or sold in the United States or imported into the United States; and the quantity of each Flame Retardant EMI Shielding Gasket that is never used, sold or offered for sale in the United States or imported into the United States.

13.   Describe all possible uses for each Flame Retardant EMI Shielding Gasket produced, provided or sold by you from 2001 to present.  Include in your answer: all known actual uses of the Flame Retardant EMI Shielding Gasket by your direct customers, the end users or any intermediates in the course of trade; any uses proposed by you or any of your customers.

14.   Describe in detail all revenues received by Zippertubing due to sales of Flame Retardant EMI Shielding Gaskets in the United States and to persons who subsequently sell or use the gaskets in the United States, itemized by product name, year of sale, quantity sold, and sales price, and identify all documents relating to all such revenue and the persons most knowledgeable about such revenue.

5

15. Describe your policies and practices with respect to the filing, storage, retention, and destruction of documents from 1996 to present, identify the persons most knowledgeable with respect thereto, and identify any document retention or destruction manual and any other documents describing your document retention or destruction policy or practice.

16. Identify the source of each document produced by you in this litigation, including the following information for each such document: (a) the Bates number or, where appropriate, range of Bates numbers; (b) the employee, former employee, and/or other individual person from whose files or office the document came; (c) the title and company affiliation of said individual; and (d) all information contained on any files, file folders, file drawer, boxes, envelopes, and/or other container from which the document was obtained, including electronic directory information.

/s/ Steven A. Nash
Rudolf E. Hutz (#484)
Francis DiGiovanni (#3189)
Daniel J. Harbison (#3954)
Steven A. Nash (PA #85707 admitted *pro hac vice*)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Phone (302) 658-9141
rhutz@cblh.com
fdigiovanni@cblh.com

Dated:  December 17, 2007        *Attorneys for Plaintiff*

579351v1

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2007, I caused a copy of the foregoing document to be served upon the following in the manner indicated:

| **VIA E-MAIL AND HAND DELIVERY** | **VIA E-MAIL AND U.S. MAIL** |
|---|---|
| William J. Marsden, Jr. | John P. Pegram |
| FISH & RICHARDSON P.C. | Michael T. Zoppo |
| 919 N. Market Street, Suite 1100 | FISH & RICHARDSON P.C. |
| P.O. Box 1114 | Citigroup Center |
| Wilmington, DE 19899-1114 | 153 East 53rd Street, 52nd Floor |
| marsden@fr.com | New York, NY 10022-4611 |
| | pegram@fr.com |
| | zoppo@fr.com |

/s/ Steven A. Nash
Steven A. Nash (PA #85707 admitted *pro hac vice*)

# Exhibit F

| | |
|---|---|
| From: | Frank DiGiovanni [FDiGiovanni@cblh.com] |
| Sent: | Wednesday, August 15, 2007 10:27 AM |
| To: | John Pegram |
| Cc: | William Marsden; Zippertubing/PH v |
| Subject: | RE: Parker-Hannifin v. Zippertubing (D. Del.) |

John - Unfortunately, no, I am not available then either. /Frank

-----Original Message-----
From: John Pegram [mailto:Pegram@fr.com]
Sent: Wednesday, August 15, 2007 10:00 AM
To: John Pegram; Frank DiGiovanni
Cc: William Marsden; Zippertubing/PH v
Subject: RE: Parker-Hannifin v. Zippertubing (D. Del.)


Frank,

Supplementing my earlier message (below), can you meet on the 27th. I will still be in the area. John

-----Original Message-----
From: John Pegram
Sent: Wednesday, August 15, 2007 9:59 AM
To: 'Frank DiGiovanni'
Cc: William Marsden; Zippertubing/PH v
Subject: RE: Parker-Hannifin v. Zippertubing (D. Del.)


Frank,

Sorry you cannot meet us on August 24th; but we understand that trial prep. must take priority.

We look forward to receiving your proposed dates for the Scheduling Order proposal, due August 22nd. I will be away until the 22nd, but should be in touch by Email and expect we can finalize the proposals on that date.

Regards, John

-----Original Message-----
From: Frank DiGiovanni [mailto:FDiGiovanni@cblh.com]
Sent: Wednesday, August 15, 2007 9:02 AM
To: John Pegram
Cc: William Marsden; Zippertubing/PH v

1

Subject: RE: Parker-Hannifin v. Zippertubing (D. Del.)

John: It now appears that the 24th will not work for a meeting due to our preparations for another trial. I apologize for that. Hopefully we can reschedule. Note: Regards, Frank

-----Original Message-----
From: John Pegram [mailto:Pegram@fr.com]
Sent: Tuesday, August 14, 2007 1:32 PM
To: Frank DiGiovanni
Cc: William Marsden; Zippertubing/PH v
Subject: RE: Parker-Hannifin v. Zippertubing (D. Del.)

Frank:

Please excuse our belated response to your Email to William Marsden, who--I believe--is on vacation.

I am coming to the area for the weekend (I grew up in Delaware County, PA and we still have a house there), and thought Friday the 24th would be a convenient time for counsel to meet in advance of the initial conference with Judge Thynge on Monday, August 27th. Perhaps we can simplify this case. We'd like to hear your thoughts about the patents, PH's infringement claims against our client (ZTJ for short), the other cases involving the same patents and any settlement proposal. We can tell you about our preliminary view and ZJT's limited activity in the United States.

Regards,

John B. Pegram
~ Fish & Richardson P.C.
Citigroup Center - 52nd Floor
153 East 53rd Street
New York, NY 10022-4611
pegram@fr.com <mailto:pegram@fr.com>
Tel.: 212-765-5070
Fax: 212-258-2291

This e-mail message is intended for the sole use of the intended recipient(s) and may contain information that is confidential, privileged and/or attorneys' work product. Any review or distribution by any other person is prohibited. If you are not an intended recipient, please immediately contact the sender and delete all copies.

-----Original Message-----
From: Frank DiGiovanni [mailto:FDiGiovanni@cblh.com]
Sent: Monday, August 06, 2007 1:55 PM

2

To: William Marsden
Subject: Parker-Hannifin v. Zippertubing (D. Del.)

William:

You have proposed 2:00 p.m. on August 24th for a meeting here in Wilmington regarding the referenced case. That should be fine. If you could provide some detail regarding the topics that you would like to discuss, that would be helpful.

Regards,

/Frank

Francis DiGiovanni
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19801
Phone: (302) 888-6316
Fax: (302) 658-5614

This e-mail and any attachment is intended only for use by the addressee(s) and may contain privileged and confidential information. Please email or call 302-658-9141 to advise the sender of a transmission error and delete the message and any attachments and any printouts. Any tax advice contained in this communication is not intended and cannot be used to avoid penalties under the Internal Revenue Code or to promote, market or recommend to another party any transaction or matter addressed herein.

*********************************************************************
*****************************************************

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

IRS CIRCULAR 230 DISCLOSURE: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

3

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This e-mail and any attachment is intended only for use by the addressee(s) and may contain privileged and confidential information. Please email or call 302-658-9141 to advise the sender of a transmission error and delete the message and any attachments and any printouts. Any tax advice contained in this communication is not intended and cannot be used to avoid penalties under the Internal Revenue Code or to promote, market or recommend to another party any transaction or matter addressed herein.



This e-mail and any attachment is intended only for use by the addressee(s) and may contain privileged and confidential information. Please email or call 302-658-9141 to advise the sender of a transmission error and delete the message and any attachments and any printouts. Any tax advice contained in this communication is not intended and cannot be used to avoid penalties under the Internal Revenue Code or to promote, market or recommend to another party any transaction or matter addressed herein.